JAMES V. CHIZEK, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES: MARK M. SHAW, INTERVENER, APPELLANT.

FILED MARCH 3, 1934.   No. 28884.

Benjamin S. Baker, Edward Shafton, John A. McKenzie and Edgar S. Hickey, for appellants.

Seymour L. Smith, Kennedy, Holland & De Lacy, Thomas Creigh, John A. McKee, Flansburg, Lee & Sheldahl, R. J. Organ, L. J. Te Poel, Philip Klutznick and Dana B. Van Dusen, contra.

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ., and Hastings, District Judge.

Eberly, J.

This is a suit in equity commenced and prosecuted in the district court for Douglas county by James V. Chizek as plaintiff against the city of Omaha, its mayor and council, Herman Beal as city engineer, the Metropolitan Utilities District, the Northern Gas & Pipe Line Company, and also four named corporations engaged in the packing house business within said city. Mark M. Shaw became a party to this proceeding by intervention. The relief sought by plaintiff, and also by intervener, speaking generally, may be said to be the prevention of the laying of a gas main in the public streets from the southern corporate limits of the city of Omaha at Twenty-seventh street to the packing houses owned and operated by the defendants designated in the pleadings and located in the vicinity of Twenty-sixth and Twenty-seventh streets at Q street, and to prohibit the transportation of natural gas through said gas main for private purposes to the defendant packing companies. No temporary injunction or restraining order was applied for. The several defendants answered and replies thereto were filed. On the issues thus formed a trial was had on the merits on February 4, 1933, at the close of which a judgment was entered denying injunctive relief and dismissing the action. From the order of the district court overruling his motion for a new trial, the plaintiff alone appeals, filing the transcript of the proceedings in this court on June 2, 1933.

Upon this appeal, so far as necessary, this court retries

the issues of fact and law presented by the record *de novo*, and reaches an independent conclusion without reference to the conclusion reached in the district court. Comp. St. 1929, sec. 20-1925.

The record discloses the fact that at the time of the trial in the district court the improvement sought to be enjoined had been completed and was in operation. The results of this situation appear in the record in practically uncontradicted evidence. That this controversy may be considered with reference to the environment from which it arises, it may be said that the Northern Gas & Pipe Line Company is the owner of a pipe line extending from the natural gas fields of Texas and Kansas to, into and through Nebraska. The company's business is the preparation and transportation of natural gas through this pipe line, and the sale of the same at wholesale to such as desire to purchase. Under contracts it now furnishes such natural gas for a limited use to the four defendant packing companies. The delivery of this product is made to these purchasers through a meter which registers the amount as delivery is made, and which is situated outside of the city of Omaha. This pipe line company is paid on the basis of the amount of gas passing through this meter.

Under a "permit" in writing, and in accordance with the plans and specifications fully approved by all the municipal authorities concerned, the four packing house companies constructed at their own cost, and have installed some five feet under ground, a gas main eighteen inches in diameter from the south boundary of the city of Omaha along Twenty-seventh street and in Twenty-sixth street and Q street to their several packing plants. The gas thus delivered is again metered at the point of receipt in the plant supplied and there measured to ascertain the relative amount to be contributed by such defendant for the purchase price as determined by the meter installed at the city boundary. Contracts in writing by the parties in interest provide that the packing house companies shall

continue to buy manufactured gas from the Metropolitan Utilities District as heretofore; that natural gas furnished through this pipe line would be used by the packing house companies for fuel purposes only; and that there would be no resale of any of the natural gas by the packers. So far as shown in the evidence none of these contract provisions has been breached.

The evidence is also undisputed that the use of manufactured gas for the purposes for which the natural gas is now employed, or may be employed under the terms of the contracts referred to, is an economic impossibility, so that there is no competition with the products of the Metropolitan Utilities District created by the transaction before us.

In view of the situation presented by the record, we are fully justified in determining the question before us on a consideration of the actual results of the transactions on which plaintiff's attack was made.

"It has been said that equity acts in the present tense, and that relief is dependent upon present and future conditions rather than solely on those existing when the suit was brought." 32 C. J. 76. See, also, *Youngblood v. Incorporated Town of Wewoka*, 95 Okla. 28; *Wendell v. City of Peoria*, 274 Ill. 613; *Detroit United Ry. v. City of Detroit*, 214 Mich. 170; *Fugel v. Becker*, 2 S. W. (2d) ( Mo.) 743; *Alsager v. Peterson*, 31 S. Dak. 452.

It is not denied that this pipe line was laid and the street, including the pavement thereon, fully restored so that it in no manner affects public travel thereon. This was done at the cost and expense of the defendant packing house companies, and with no damages whatever to either public corporation defendant within whose limits the work was performed.

It also appears that by a deed in writing the defendant packing houses conveyed this pipe line to the Metropolitan Utilities District of Omaha, reserving, however, the full and free use of the pipe line for the period of six years, at the end of which time all reserved right of use shall

terminate; further, that this deed had been accepted and recorded by the grantee prior to the final hearing in the trial court.

As to the general financial effect of this transaction, Mr. Robinson, the chief engineer for the Metropolitan Utilities District, testifies, in substance, that he was familiar with all of the property belonging to the Metropolitan Utilities District, and that the pipe line which was placed in Twenty-seventh street by the defendant packers and which was deeded to the Metropolitan Utilities District on January 18, 1932, was worth approximately $50,-000; that the pipe line in Twenty-seventh street provides a way for the carrying of manufactured gas to the southern limits of the city, and that this condition will be advantageous to the city and the district, and furthermore obtains potential customers for the large use of natural gas for industrial value; and that there are no disadvantages to the Metropolitan Utilities District in placing the natural gas pipe line in Twenty-seventh street and Q street. It thus affirmatively appears that the Metropolitan Utilities District has acquired title to property of the value of $50,000, subject only to a use of six years, without the expenditure of public funds, and without in any manner entailing upon it or the city of Omaha any burden of future expenditures. So far as the transaction affecting injuriously the business of the Utilities District or the proprietary rights of the city of Omaha, the contrary appears from uncontradicted evidence.

Even assuming, for the purpose of this discussion only, that the corporate acts questioned in this litigation are wholly illegal and invalid, still it is patent that they have occasioned no expenditure of public funds; that they will require no outlays by the public corporations involved; and neither will they necessitate or involve any future increase in the burden of municipal taxation.

As to the placing of the natural gas main in the streets of Omaha in the manner disclosed by this record, it will be remembered that "Not every invasion of, or structure

upon, a public highway is unlawful, but that they may legally exist, the authority therefor must have its ultimate source in the legislature of the state in whose jurisdiction the highway exists." *World Realty Co. v. City of Omaha*, 113 Neb. 396.

"One who seeks the extraordinary remedy of injunction must establish by competent evidence every controverted fact necessary to entitle the party to the relief to be granted." *World Realty Co. v. City of Omaha, supra*.

"A private person * * * seeking the aid of equity to restrain a public nuisance must show some special injury peculiar to such person * * * aside from and independent of the general injury to the public." *World Realty Co. v. City of Omaha, supra*.

It is obvious the requirement that plaintiff, when a private person seeking an injunction against a public nuisance, "must show some special injury peculiar to" himself is a prerequisite to any injunctive relief. The only material evidence in the instant case relating to this proposition is a stipulation made by the parties at the trial, to the effect that appellant was and is a resident and taxpayer of Omaha, Nebraska. This court is committed to the view that this was, and is, insufficient. The case of *Ray v. Colby & Tenney*, 5 Neb. (Unof.) 151, it appears, was a proceeding to enjoin Colby and Tenney from proceeding to erect, construct, equip, maintain and operate gas works in the city of North Platte for the purpose of making, supplying and selling gas for fuel and for lighting purposes. One Lloyd, intervening therein, alleged in his petition that he was a resident taxpayer, and in addition properly pleaded ultimate facts which, if true, disclosed that the sole ordinance under which the defendants were proceeding with the work sought to be enjoined was wholly void and never in legal force and effect in the city of North Platte. The issue involved in this North Platte case, as in the instant case, under the assumption we here indulge for the purpose of discussion, was whether a resident taxpayer as such, in his private

capacity, was competent and empowered by legal proceedings to enjoin the unlawful laying of gas pipes on the public streets. In the opinion in the case just cited we find the following: "The first question presented is, Does the petition of Lloyd state a cause of action which he is entitled to maintain? His allegations of interest in this controversy are citizenship and being a taxpayer. He does not show by his pleading wherein either of these interests are or may be injured by the acts complained of; therefore we must conclude that his petition is insufficient." In the syllabus the rule is stated: "A private individual cannot maintain an action to prevent gas mains being laid in the streets of a city unless he plead and prove that some special injury will result to him." The rule thus stated has been approved in principle in the following cases: *Kittle v. Fremont,* 1 Neb. 329; *Shed v. Hawthorne,* 3 Neb. 179; *Hill v. Pierson,* 45 Neb. 503; *George v. Peckham,* 73 Neb. 794; *Lee v. City of McCook,* 82 Neb. 26; *Gleason v. Loose-Wiles Cracker & Candy Co.,* 88 Neb. 83; *Powers v. Flansburg,* 90 Neb. 467; *Brown v. Easterday,* 110 Neb. 729. All the decisions cited, in substance, recognize the established principle in this jurisdiction, viz.: "It is essential to the right of an individual to relief by injunction against a public nuisance that he should show that he has suffered or will suffer some special injury other than that in which the general public shares, and the difference between the injury to him and the public must be one of kind, and not merely of degree." *Ayers v. Citizens R. Co.,* 83 Neb. 26. See, also, *Woods v. Lincoln Traction Co.,* 83 Neb. 23.

The case of *Tukey v. City of Omaha,* 54 Neb. 370, cited by plaintiff, is not in point. That case involved the issuance of an injunction where it was charged and established that "an illegal disposition of the public money, or the illegal creation of a debt which must be paid by taxation," was threatened and would occur if not enjoined. The evidence in the instant case affirmatively negatives both of the conditions quoted.

This reasoning is expressly recognized and approved in *Clark v. Interstate Independent Telephone Co.*, 72 Neb. 883, also cited by plaintiff, where the doctrine is announced, in effect, that a taxpayer, under the facts involved in that case, in the absence of an injury peculiar to himself, cannot maintain a suit for an injunction against a municipality unless the results of the action attacked in such proceeding will cause such "a wrongful squandering or surrendering of the money or property of the city that taxation will be increased thereby."

The conclusion follows that, under the facts alleged in the petition of plaintiff, and established by the evidence in the instant case, he has failed to establish that any special injury has or will result to him from the matter sought to be enjoined. Neither does it appear that any wrongful squandering of the money of the city has occurred, nor that taxation will in any measure be increased thereby.

Plaintiff is therefore not entitled to maintain this action for injunctive relief, and on this ground the district court properly dismissed the action. In this situation, the basic pleading failing to state a cause of action in favor of plaintiff and being wholly without equity, the determination of other questions presented by the briefs and argued by counsel is wholly unnecessary to a proper disposition of this case and will not be further considered.

It follows that the judgment of the trial court dismissing plaintiff's action and denying him injunctive relief is correct, and is

AFFIRMED.