GERING IRRIGATION DISTRICT, APPELLANT, V. MITCHELL
IRRIGATION DISTRICT ET AL., APPELLEES.
3 N. W. (2d) 566

FILED APRIL 24, 1942. No. 31314.

*Neighbors & Danielson,* for appellant.

*James A. Greenwood* and *Floyd E. Wright, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action for an injunction by the Gering Irrigation District, a corporation, plaintiff and appellant, against the Mitchell Irrigation District, a corporation, Guy Spurrier, Ralph Morrison and James Nickol, the board of directors of Mitchell Irrigation District, and Cy Godby, the superintendent of the district, defendants and appellees.

On the issues presented by the pleadings a trial was had to the court which resulted in a dismissal of plaintiff's petition. A motion for new trial was duly filed which was overruled. From this judgment the plaintiff has appealed. The case comes here for review *de novo*.

For assignments of error the plaintiff sets forth substantially that the findings and decree are contrary to and not supported by the evidence and that they are contrary to law.

In the petition by way of summary it is set forth that the plaintiff is an irrigation district comprising about 14,000 acres of land in the vicinity of Gering, Scotts Bluff county, Nebraska, and that the defendant district is also an irrigation district, comprising about 13,500 acres of land, also in the vicinity of Gering. The plaintiff has an appropriation of water for irrigation under the laws of Nebraska in the amount of 208.62 cubic feet of water a second, with a priority date of March 15, 1897. The defendant district has an appropriation under the laws of Nebraska and Wyoming of 194.6 cubic feet of water a second with a priority date of June 20, 1890. The head-gate and diversion works of plaintiff are on the North Platte river east of the Nebraska-Wyoming line, and the head-gate and diversion works of the defendant district are on the North Platte river west of the Nebraska-Wyoming line. The appropriation of the defendant district was obtained from the Mitchell Canal & Irrigating Company by assignment.

The petition further sets forth that on September 24, 1897, the Mitchell Canal & Irrigating Company contracted by an instrument which contained no power of revocation, —in terms a deed,—for a valuable consideration, to extend to the plaintiff the use of its canal for the purpose of transportation of its appropriated water to the head-gate of its irrigation district. The parties to this action make no contention that they are not bound by the instrument.

In the petition it is alleged that the defendant district has violated its contract for delivery or transportation of water, and has and is engaging in practices which interfere with and prevent proper and complete transportation of water to

which plaintiff is entitled, and which effect an appropriation or diversion of water belonging to plaintiff by the defendant district. It is to enjoin these alleged acts and practices that the plaintiff has instituted this action.

The defendants by answer deny that they have failed to perform the obligations of the contract, and further deny that they have in any wise interfered with or prevented the complete transportation of water to which plaintiff is or has been entitled or that they have appropriated or diverted any of its water.

In point of fact at the time of the execution of the instrument referred to, which will be hereinafter called the contract, the defendant district, or rather its predecessor, had a diversion inlet or head-gate from the North Platte river, a short distance west of the Nebraska-Wyoming line. It had a canal extending eastward from the head-gate, of the length of approximately 27 miles, through its irrigation district. The purpose of the canal was to transport the appropriated water to lateral turnouts where it was to be taken out in order that it might be used for irrigation purposes. Along the canal and in the district are about 112 turnouts. After the contract was entered into, the plaintiff constructed a diversion inlet or head-gate at a point about three-quarters of a mile to the east of the inlet of the defendant district, which was on the Nebraska side of the line. It constructed a canal which connected with that of the defendant district at a point approximately two miles from plaintiff's inlet. The appropriated water of each district is measured in at its head-gate and when both are drawing water at the same time the water joins at the junction of the two canals. From this point the water of the defendant district is carried down the canal and distributed there-along proportionately to its irrigators through the 112 turnouts. The water of the plaintiff must be transported along the entire length of the canal and at the east end it is run over a flume and measured to the plaintiff.

In the canal are 13 checks spread over the entire length of the canal. The exact distances between these checks are

not disclosed, but we may assume that the intervals between are somewhere near equal. The checks are of concrete and were constructed in the base of the canal and at the time of original construction their top surfaces were probably above the bottom line of the canal. The checks were so built that removable boards might be placed on top of the checks in order that their heights might be elevated. Among the purposes of the checks were to control the velocity of the water and to control its elevation to the end that water might be efficiently and equally distributed.

The canal passes through various kinds and qualities of soil throughout its length. Three types are named. These three are sand loam, loam sand and Brule clay. Some general information is given as to their relative porosity, quantity and location, but no attempt at reasonable accuracy is given. It appears that the more sandy portion is to the west end, and that east of this and over most of the distance the canal runs through Brule clay.

In addition to its appropriation of water from the river the plaintiff in 1913 by contract obtained the right to a supplemental supply of water. The government of the United States, pursuant to act of congress, completed a reservoir known as the Pathfinder reservoir to the westward in Wyoming, for purposes among which was the storage of water to be used for irrigation in supplement of appropriations from the natural flow of the North Platte river. By contract the plaintiff purchased the right within given limits and restrictions to the use of water from this reservoir when it was not obtaining water from the river under its 1897 appropriation.

The amount of water received and to be received by plaintiff and the defendant corporation under their respective appropriations was determined and determinable by measurement at their head-gates or inlets from the North Platte river. Likewise the amount of water received and to be received by plaintiff from the Pathfinder reservoir was determined and determinable by measurement at its head-gate or inlet on the river. It may well be stated here that at no time

has the plaintiff received in the aggregate an amount of water from its appropriation and its purchase in excess of the maximum amount allowable under its appropriation.

Under the contract between plaintiff and defendant district it was contemplated that there would be transportation losses in the conveyance of plaintiff's water from its appropriation inlet to the head-gate of its district. These losses were to be borne by the plaintiff. No formula was prescribed for the determination of such losses.

Several elements contribute to these losses. The most important perhaps are seepage or leakage and evaporation.

The first phase of the action of the plaintiff resolves itself into the proposition that for a long period of time the defendant district under the guise of deduction of transportation losses has been appropriating water belonging to the plaintiff to the use of the irrigators in its district. It is this that plaintiff seeks to enjoin. It also seeks to have the court fix a formula whereby the amount of water to be received during the irrigating period of the year, and each month thereof, may be determined. The second phase is a charge that by reason of the manner in which the defendant district operates its canal and controls the water therein, when both parties are at the same time receiving water under their respective appropriations, the water coming to plaintiff is allowed to fluctuate so that plaintiff is not permitted to obtain the full beneficial use of the water received. This practice plaintiff seeks to enjoin. The third phase is the charge that when the defendant district is receiving no water under its appropriation, and when the plaintiff is receiving water under its purchase agreement from the Pathfinder reservoir, the defendant district maintains the checks in the canal in such manner that the flow of water is unduly retarded, thus causing excessive transportation losses and preventing receipt by the plaintiff of all water to which it is entitled.

Taking the phases in their order, no dispute exists as to the accuracy of measurements of water as it comes in through the inlets from the river and the evidence does not

direct our attention to any above the junction of the two canals, nor is there any dispute about the claim that plaintiff is entitled to all of the water drawn under its appropriation and purchase agreement except the portion which is lost in transportation. The dispute depends upon transportation losses from the junction of the two canals to the head-gate of the plaintiff, which is to the east of the area served by the defendant district, and the methods used by the defendant district in computing, measuring and allocating the losses. It will be noted here that transportation, control of transportation and delivery of water to plaintiff's head-gate are entirely and exclusively in the hands of the defendant district.

We arrive at the conclusion from all of the evidence that transportation losses are variable from month to month and day to day, and even on occasion from hour to hour. The variations are dependent upon many things, some of the most important of which are (1) volume of water, (2) velocity of flow, (3) distance, and (4) porosity of soil over or through which the water is transported.

In arriving at a conclusion here, on the record, we are dependent largely upon results of and deductions from experience rather than upon measurements of losses attending the various specific agencies producing loss. In so far as volume is concerned the measurements of the volume of intake of the plaintiff at its diversion inlet and at its head-gate are certain as by computation is the loss to it en route. No reliable information is given as to the velocity of the water at any given time, or over any period or periods, further than general statements as to the length of time it would take water to travel the length of the canal under hypothetical conditions. Distance is discussed for the most part in its relation to the factor of evaporation which in its turn is dependent upon temperature and other atmospheric conditions, but it is without preciseness. Likewise no effort has been made in the record to give information as to the relative porosity of the soil of all or of any part of the canal.

The plaintiff produced expert witnesses, irrigation engi-

neers, who took into consideration the known measurements at inlet and district head-gate, the results of some knowledge gained from observation of the physical structures and physical conditions in the canal, evaporation data from stations close at hand where evaporation was measured, and the other variable factors involved in water transportation loss, and gave it as their conclusion and opinion that for the period covered by the action here the defendant district had deducted from the water received by plaintiff at its inlet larger quantities than could be accounted for by transportation loss. The details and computations of these losses are too lengthy to be set forth here.

Against these standards and computations, which plaintiff calls, at least in part, theoretical, the defendant district has set up by evidence no counter standards and computations. It discloses only a practice in the distribution of water. The practice is, with knowledge of its own intake of water and sometimes, perhaps most of the time, with knowledge of plaintiff's intake, to estimate the necessary adjustment of the outlets to its irrigators, which outlets have no measuring devices, with the purpose of giving these irrigators 80 per cent. of its inflow, and of giving to plaintiff the balance of the water in the canal, and then making adjustments to meet these estimates. This practice makes allowance for a 20 per cent. transportation loss. These estimates are made by the man or men in charge of the operation of the canal.

The only element of accuracy or approaching accuracy in the entire operation is with regard to the amount of water taken in at the inlet from the river. There is no measuring device in the canal or at any irrigator outlet below the inlet at the river. No defense witness was able to say as a fact, or to give an opinion based on reasonable foundation, that the use of water responded specifically or generally to the estimates made by the operators of the canal. An examination of the record of the measured intake of plaintiff at its river intake and its measured receipt of water at its district head-gate, and of the measured intake of the defendant dis-

trict, discloses that there was a wide variation from the result contemplated by the described practice of the defendant district for division of water in a manner more often than not to the disadvantage of the plaintiff.

We are brought to the conclusion on this, the first phase of this action, that on the questions involved such evidence as plaintiff has adduced must be accepted. Is it then sufficient in and of itself to warrant granting the relief prayed, or some of it?

We think it is sufficient to justify a finding that in the past the defendant district has used water for its purposes which properly should have been delivered to the plaintiff and that a similar result will follow a continuance of the practices now being followed by the defendant district. It follows that injunction will lie to prevent any practice which will prevent the plaintiff from receiving all of the water to which it is entitled under its appropriation which comes through its river inlet, less transportation loss.

In the light of the evidence which discloses almost an entire lack of measuring devices or means whereby any reasonably accurate division of water can be accomplished, it is not so clear that a workable formula can be worked out and prescribed for future division of water when both districts are drawing water under their respective appropriations. It is clear that the plaintiff has a right which requires protection in the light of past trespasses thereon. The plaintiff has supplied a formula based in part on fact, and in part on opinion drawn from facts some of which are far from certain. The defendants have brought forth no formula. The most that can be said is that they have sought to cast doubt upon, and add to the uncertainty of, the facts out of which have come the opinions on which plaintiff's formula is based.

In this light we are inclined to the view that the formula supplied by plaintiff should be applied to the division of water until such time as by proper and sufficient evidence the defendant district in a proper action shows that the formula is faulty and should be revised.

The formula is as follows: The total loss of water in

transportation of the water drawn by months from April to October shall be: April, 26 second feet; May, 28 second feet; June, 30 second feet; July, 33 second feet; August, 32 second feet; September, 28 second feet; October, 23 second feet.

In case the two are drawing an equal amount of water, 60 per cent. of the transportation loss shall be attributed and charged to plaintiff and 40 per cent. to the defendant district. If they are drawing in unequal amounts the same proportionate basis shall be applied in the determination of the respective transportation losses. This formula provides the maximum transportation loss which may be attributed and charged to the plaintiff.

Coming now to the second phase, the evidence clearly shows that throughout the irrigation seasons there have been many quite marked fluctuations in the flow of water as it has come to the head-gate of plaintiff's district. Various reasons for fluctuation have been assigned, some of which were at least to a degree under control of the defendant district and some of which were not. No single incident has been pointed out when the defendant district failed reasonably to take the necessary steps to correct the situation responsible for the fluctuation. There has been no constancy of flow in the canal, and it is not difficult to understand that there are difficulties in providing against even marked fluctuations when it is remembered that the canal is not only an artery for the transportation of water, but is also a feeder for more than a hundred irrigation outlets along its distance, which must be separately adjusted to meet the changing conditions. Other causes of fluctuation are rainfall and seepage or flow into the canal from an adjacent irrigation district. Furthermore, if the fluctuation is upward to the extent that a portion of it becomes waste water, it is the duty of the plaintiff under the contract to provide a wasteway to carry this water away.

There is insufficient evidence to justify a finding that the defendant district has failed to exercise the control of the canal necessary to prevent excessive fluctuations in the flow of water therein.

Now as to the third phase of the action the record discloses that there are periods when neither the plaintiff nor defendant district is obtaining water under appropriation. During a portion of such periods the plaintiff draws water from the Pathfinder reservoir by reason of its purchase agreement. This water enters through the river appropriation inlet and travels the length of the canal to plaintiff's head-gate. This water, of course, belongs to the plaintiff in its entirety. It claims, however, that the defendant district by reason of the height at which it keeps the checks in the canal retards the flow of this water, which causes losses by evaporation and seepage which would not occur if the checks were lowered sufficiently to permit a free flow to its head-gate. This the defendant district denies.

*Arguendo,* the defendant district says that the plaintiff has no right to have this water transported in the canal since it is outside the contract of the parties; that the parties had in contemplation only such water as plaintiff should receive under its appropriation from the North Platte river. This matter requires no consideration in the case at bar. The defendants have tendered no such issue here. This practice has gone on continuously since 1913 and we are not called upon to determine whether it has been done of right or by permission. Whether of right or by permission, no rule is cited which would allow impounding or confiscation of such water by the defendant district.

Admittedly during the periods when the plaintiff is receiving water from the Pathfinder reservoir, the checks are maintained at a height considerably above the concrete bases of the checks. This controls the velocity of the water and its elevation back of the checks. The longer it takes for the water to flow down the more evaporation, and the higher the water is held the more seepage there would be through the perimeter and into the soil surrounding the canal. This represents a loss to the plaintiff. The defendant district contends that it maintains checks during these periods only to a height necessary to hold the waterflow at a velocity which will not scour and damage the canal.

The record discloses that at least at one time during these operations the velocity was reduced to slightly more than one and one-half feet a second. The record further discloses that during the time when the defendant district is drawing water a velocity of two and one-half feet a second is not unusual or dangerous to the canal. No reason is given which would justify a lower velocity when plaintiff alone is using the canal than when the defendant district alone or plaintiff and defendant together are using it. It is suggested that the maintenance of the higher level has the effect of keeping the canal primed, which would have the effect of reducing transportation losses when the defendant district resumes drawing water under its appropriation. This is undoubtedly true, but nothing appears in the record or the briefs which would justify a finding that a part of plaintiff's water may be used for this purpose.

The record justifies a finding and a holding that the maintenance of checks in such manner and at heights that would have the effect of reducing the velocity of the flow of water below two and one-half feet a second when the plaintiff is receiving water from the Pathfinder reservoir is unwarranted and should be enjoined.

The defendant district cites the rule that one who seeks an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief, and that injunction will not lie unless the right is clear, the damage irreparable and the remedy at law is inadequate to prevent failure of justice. *Buettgenbach v. Gerbig,* 2 Neb. (Unof.) 889, 90 N. W. 654; *Radford v. Wood,* 83 Neb. 773, 120 N. W. 458; *Boschulte v. Elkhorn River Drainage District,* 102 Neb. 451, 167 N. W. 730; *World Realty Co. v. City of Omaha,* 113 Neb. 396, 203 N. W. 574; *Chizek v. City of Omaha,* 126 Neb. 333, 253 N. W. 441. We conclude that plaintiff's evidence meets the requirements of this rule. It is true that the evidence to sustain plaintiff's position is not as complete and satisfactory as might be desired, but there is competent evidence supporting the controverted facts. The right is clear and it requires no stretch of the imagination to arrive at the

conclusion that this kind of damage is irreparable and a remedy at law is inadequate.

The exigencies of this situation require that we hold that a continuous wrongful use or diversion of irrigation water will be restrained in equity at the instance of one who is deprived of the rightful use of the water so used or diverted, although no actual damage is averred or proved. See *Moore v. Clear Lake Water Works*, 68 Cal. 146, 8 Pac. 816; *State v. Cochran*, 138 Neb. 163, 292 N. W. 239; 67 C. J. 1386.

It is therefore the opinion of this court that the decree of the district court be and the same is reversed, and the cause remanded, with directions to enter a decree in accordance with the findings herein as follows:

The defendant district shall be enjoined from engaging in any practice the effect of which would be to prevent plaintiff from receiving all of the water coming to it under its 1897 appropriation, except that portion lost in transportation from its inlet at the North Platte river to the head-gate of its district, taking into consideration all factors necessary to be considered in the computation of transportation losses.

For the purposes of computation of transportation losses until such time as by proper and sufficient evidence the defendant district in a proper action shows competently that the formula is faulty and should be revised, the following formula shall be adhered to in computing and determining the minimum amount of water that plaintiff shall receive, or the maximum amount of transportation loss to be charged to it at times when both parties are drawing water under their appropriations: April, 26 second feet; May, 28 second feet; June, 30 second feet; July, 33 second feet; August, 32 second feet; September, 28 second feet; October, 23 second feet. In case the two are drawing an equal amount of water, 60 per cent. of the transportation loss shall be attributed and charged to plaintiff and 40 per cent. to the defendant district. If they are drawing in unequal amounts the same proportionate basis shall be applied in the determination of the respective transportation losses.

The defendant district shall be enjoined from, by the use

of checks or otherwise, reducing or retarding the velocity of flow of water which the plaintiff shall be receiving through the canal from the Pathfinder reservoir below the rate or speed of two and one-half feet a second, and from appropriating any portions of such water to its own use or for any of its purposes.

REVERSED.