ARTHUR JENNINGS HANSON ET AL., APPELLANTS, v. CITY OF OMAHA ET AL., APPELLEES.

59 N. W. 2d 622

Filed July 10, 1953. No. 33311.

404

*Swenson, Viren & Turner* and *Neal H. Hilmes,* for appellants.

*Wells, Martin & Lane, Edward F. Fogarty, Herbert M. Fitle, James M. Paxson,* and *Bernard E. Vinardi,* for appellees.

*William R. King,* amicus curiae.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action for injunction to enjoin the defendants, and each of them, from enforcing ordinances Nos. 17054 and 17205 of the city of Omaha, a metropolitan city hereinafter referred to as city, the purpose of the ordinances being to vacate certain streets and an alley in the city. In addition, this action seeks to have the ordinances declared void and the action of the city council in adopting them to be declared arbitrary and unreasonable. Trial was had in the district court. The trial judge rendered judgment in favor of the defendants and against the plaintiffs to the effect that under the city charter, the applicable sections of the statutes relating thereto, and the decision of this court in Hanson v. City of Omaha, 154 Neb. 72, 46 N. W.

2d 896, the city council and public officials of the city acted within the authority granted to vacate the streets and alley in question, and the ordinances were held to be valid in all respects. The plaintiffs filed a motion for new trial. From the order of the trial court overruling the motion for new trial, plaintiffs perfected appeal to this court.

For convenience we will refer to the defendant Home of the Good Shepherd of Omaha, Inc., a corporation, as the home, the mayor and members of the city council as city council, and the city planning commission as planning commission.

The city is a home rule city governed by a city charter. In the opinion we will refer to the sections of the statute as the same appear in the Revised Statutes, 1943. Strictly speaking, such sections of the statute are not applicable to the city as such, but as provisions of the home rule charter.

Section 14-375, R. S. 1943, which is of importance here provides: "Upon the recommendation of the city planning commission, the city council may, by ordinance or resolution, vacate any street or alley within any such city, without any petition being filed therefor. Before any such street or alley shall be vacated, the council shall appoint a committee of at least three members thereof, who shall faithfully and impartially and after reasonable notice to the owners and parties interested in property affected by such vacation, assess the damages, if any, to such owners and parties affected. They shall take into consideration the amount of special benefits, if any, arising from such vacation and shall file their report in writing with the city clerk. Any owner or party interested in property affected by such vacation, who shall file a written protest with such committee, may appeal from the adoption by the council of such appraisers' report in the manner provided in section 14-379, but such appeal shall not stay the passage of the ordinance or resolution vacating such street or alley.

The award of appraisers shall be final and conclusive as the order of a court of general jurisdiction, unless appealed therefrom."

In Hanson v. City of Omaha, *supra*, most of the same parties plaintiff appear as in the instant case, and while there is some difference in the personnel of the city council due to an election, the city council is here in the same manner as in the cited case. The subject matter of the action and the prayer for relief were the same as in the instant case, except that section 14-375, R. S. 1943, is the one in controversy here. The cited case held, in referring to the provisions of the city charter designated section 14-324, R. S. 1943, and section 14-375, R. S. 1943, that compliance with the cited statutory provisions is an essential act to the valid enactment of an ordinance vacating a street or alley. Therefore, this court held, insofar as the power of the city to vacate streets and alleys is concerned, the city was vested with such power if compliance with the city charter was had.

The pertinent assignments of error to a determination of this appeal are: (1) The trial court erred in finding that the proper proceedings for such vacation were taken by the city council in accordance with the requirements of the city charter, the statutes applicable thereto, and the Constitution of Nebraska, and in finding that the ordinances in question were valid in all respects; (2) the trial court erred in finding that the city council acted within its discretionary power. and in failing to find that its action was arbitrary and unreasonable in adopting the city ordinances here in question; and (3) the trial court erred in finding that public need and benefit responsive to a public demand required the vacation of the streets and alley in question.

On June 12, 1951, it appears that the city council had before it a letter from the president of the home to the effect that the home owned the fee simple title to all the real estate abutting the areas hereinafter described and, as owner, waived any and all damages and claims for

damages by reason of the vacating of said areas. The council was requested to take such steps as might be necessary or proper under section 14-375, R. S. 1943, as interpreted by the Supreme Court of Nebraska in its opinion in Hanson v. City of Omaha, *supra,* to vacate the following described areas: That portion of the east-west alley in Parmenter Place, an addition to the city of Omaha, abutting Lot 7, Parmenter Place on the south; that portion of Thirty-ninth Street lying between the north line of Jones Street and the prolongation of the north line of the south 14 feet of Lot 1, Block 5, West Omaha, an addition to the city of Omaha; and that portion of Jackson Street lying between the east line of Thirty-ninth Street and the prolongation of the east line of Lot 11, Parmenter Place, an addition to the city of Omaha. This letter was referred by the city council to the planning commission for inspection. The planning commission returned this communication to the city council and informed the city council that it had a hearing on the same request on June 1, 1949, and on August 1, 1951, a subsequent hearing was held at a regular meeting of the planning commission. The attorney for the home and an attorney for some of the property owners who claimed to be affected by the request attended and were heard. Thereafter the planning commission, by motion, recommended the vacation of the streets and alley as requested.

It appears that all persons, various civic organizations, and others, under notice which is not questioned, who opposed the vacation of the streets and alley, were heard before the planning commission and the city council.

The city council adopted ordinances Nos. 17054 and 17205. Without repeating the substance of these ordinances, they conform to section 14-375, R. S. 1943, applicable to the city charter as aforesaid.

The properties of the appellants are described as follows: The west 15 feet of the north 165 feet of Lot 1, Block 4, West Omaha, an addition to the city, and the

east 75 feet of the north 165 feet of Lot 2, Block 4, West Omaha, an addition to the city, said properties being known as 3861-3-5-7 Dewey Avenue, owned of record by Arthur J. and Mildred P. Hanson; the east 55 feet of the north 100 feet of Lot 1, Block 5, West Omaha, an addition to the city, known as 3901 Dewey Avenue, and owned of record by Louis B. and Jack Drew; the north 68 feet of the south 87 feet of the east 155 feet of Lot 1, Block 5, West Omaha, an addition to the city, having no house number and being owned of record by Eugenie A. Whitmore one-half, and Louis B. and Jack Drew one-half; Lot 12, Parmenter Place, an addition to the city, known as 602 South Thirty-eighth Avenue, and owned of record by Jane R. Herrick, subject to a life estate to Blanche Burkett Herrick and her husband; and Lot 13, Parmenter Place, an addition to the city, known as 604 South Thirty-eighth Avenue and owned of record by Ralph S. Tully. The following described property is the property over which Arthur J. Hanson has an easement: The west 90 feet of the north 165 feet of Lot 2, Block 4, West Omaha, an addition to the city, known as 3873 Dewey Avenue, and owned of record by Louis B. Steiniger, now under guardianship.

The home was first established in the city April 4, 1894, and made its initial purchase in the area in controversy July 10, 1899, in a then suburban location. The appellants' respective purchases were made by Hanson June 16, 1942, by Drew September 2, 1941, and November 21, 1941, by Herrick October 4, 1941, and by Tully October 14, 1941.

The home conducts its work in a building consisting of several units. The value of its present grounds and building is in excess of one million dollars. The home is a religious, charitable, and educational institution and has been so conducted since its establishment. It is devoted exclusively to the maintenance, care, and training of underprivileged, delinquent, and problem girls, without regard to race, creed, social status, or ability

to pay. It is a nonprofit corporation, conducted by one of the sisterhoods of the Roman Catholic Church. The sole income of the home is derived from voluntary contributions by the general public. The girls are admitted to the home on their own voluntary applications, or on the request of their parents, guardians, relations, or friends, and in some instances from the juvenile court of Douglas County, Nebraska. There is regular daily instruction in grade and high school subjects, and other instruction that is beneficial to the girls when they leave the home, also some commercial work is done in the home. The educational facilities of the home are approved by the state authorities. On occasion the home is visited by public authorities to ascertain the welfare of the girls. The home is conducted under the supervision and subject to the requirements of the Nebraska Division of Child Welfare and Assistance. Monthly reports are made as required by law and the regulations adopted and promulgated by the Board of Control. At the time of trial there were 172 girls taught by 9 teachers, each of whom held a certificate required by the school laws of this state. The home gives free care to delinquent girls committed by the juvenile court of Douglas County, and since the establishment of the said court has averaged 40 to 50 such girls under constant care. The savings to the taxpayers of Nebraska for such girls alone is in an amount of about $45,000 per annum.

It is stipulated that the alley and parts of the streets proposed to be vacated under the ordinances of the city are intended to be used by the home for extension of its playgrounds and for such other purposes as shall be conducive to the promotion and welfare of the home and the girls cared for therein.

We deem it unnecessary to further state the facts with reference to the work of the home and its need, and what has been accomplished by it. The home serves the public, and a public need exists for it, especially

so at the present time due to the increase in the number of girls that come from broken homes, and the fact that they are, for the most part, younger in age than formerly.

The appellants contend that the action of the city council in entertaining the request of the home, in transmitting the same to the city planning commission, and the action of the commission taken thereon is without jurisdiction, void, and of no effect, and as a result renders ordinances Nos. 17054 and 17205 void and of no effect.

In this connection the appellants cite Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490: "The power conferred upon municipal corporations by their charters to enact ordinances on specified subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects." See, also, Reid v. City of Omaha, 150 Neb. 286, 34 N. W. 2d 375; Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649.

The home rule charter adopted by the city of Omaha is a grant as distinguished from a limitation of power. Being a grant of power the charter is to be construed according to the same rules as a legislative act containing the same provisions in determining what authority is thereby granted the city government. See, Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Falldorf v. City of Grand Island, 138 Neb. 212, 292 N. W. 598; Wagner v. City of Omaha, supra.

A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair implication, by the laws which created it or by other laws, constitutional or statutory, applicable to it. Wagner v. City of Omaha, supra.

Section 14-375, R. S. 1943, does not specify the source from which the city planning commission may or must

receive a suggestion, request, or recommendation for its approval, nor does it forbid the city planning commission to act with or without such suggestion. The power to vacate streets and alleys is in the city council, and that power cannot be limited by reading into section 14-375, R. S. 1943, a meaning that the planning commission in the exercise of its advisory function must act solely on its own initiative.

The intention of the Legislature is obvious, that is, to permit vacation of streets or alleys either on petition of interested property owners, or without a petition, at the instance of any person who may be interested or who desires or sees fit to bring the matter to the attention of the planning commission. This may be by letter as was done in the instant case. The city council alone has the power to vacate streets. The following authority is applicable: Where an act is clear and unambiguous, courts will not by interpretation or construction usurp the function of the Legislature and give it a meaning not intended or expressed therein. In such a case it is not the province of courts to read into a statute something not found therein or to give it a meaning not warranted by its legislative language. See, City of Wayne v. Adams, 156 Neb. 297, 56 N. W. 2d 117; Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409.

The appellants cite and call attention to certain provisions of the city charter and sections of the statute applicable thereto which have to do with eminent domain. The appellants contend that section 14-375, R. S. 1943, also deals with eminent domain, and that in said section provision for appeal is made from the adoption of appraisers' report as provided for in section 14-379, R. S. 1943. The appellants then direct attention to Chapter 76, article 7, R. S. Supp., 1951, which constitutes the complete uniform eminent domain act and provides for uniform methods for exercising eminent domain in connection therewith. With reference to sec-

tion 14-379, R. S. 1943, being repealed, as set forth by appellants, any appeal substituted for section 14-379, R. S. 1943, was available to the appellants in this action had they seen fit to pursue the same.

There is no language appearing at the heading of or in section 14-375, R. S. 1943, to indicate that this section in any manner has anything to do with the subject of eminent domain. It is apparent that the vacation of a public street on the recommendation of the planning commission is not analogous to an eminent domain proceeding to appropriate private property for public use. Both proceedings are essentially different in their scope and are treated separately in the city charter, although both proceedings are based on the police power. The appellants' contention is without merit.

The record discloses that when West Omaha became a part of the city of Omaha, the streets became known as Dewey Avenue, Jackson, and Jones Streets, running east and west, and Thirty-ninth Street running north and south. At the present time Thirty-ninth Street is not paved from Jackson Street to Leavenworth Street, and Jackson Street is not paved from Thirty-eighth Avenue to Thirty-ninth Street. The grade on Thirty-eighth Avenue from Leavenworth Street to Jones Street is 6.25 percent up; Thirty-ninth Street, Jackson Street to Jones Street is 6.13 percent down; and Thirty-ninth Street from Dewey Avenue to Jackson Street is 5.38 percent down. The grade of Thirty-ninth Street is less than the grade of Fortieth Street or Thirty-eighth Avenue running south from Dewey Avenue to Leavenworth Street.

The appellants are fee owners of real estate, or have an interest in real estate, in the immediate vicinity of the streets and alley proposed to be vacated. None of them, however, own or have an interest in real estate abutting the streets and alley proposed to be vacated.

Arthur Jennings Hanson testified that he is the owner

of No. 3863 Dewey Avenue upon which property are two duplexes facing Dewey Avenue with garages connected therewith. These are modern apartments, two apartments to each building, and there are two buildings between this witness's property and Thirty-ninth Street of the same type and character, constructed at the same time, and owned by someone else. The garages are accessible from Thirty-ninth Street only, that is, from that portion of Thirty-ninth Street that goes south from Dewey Avenue. The entrance to the garages is 30 to 40 feet from the point where the closing of the street is supposed to start, that is, from the end of the property line. This property is occupied by tenants, and the vacating of the streets and alley would deprive the owner and the tenants of facilities that they now enjoy in getting in and out of the garages. In slippery weather, Thirty-ninth Street being the only street that goes north to the garages from Leavenworth Street, that is the only way in which they could get to the garages because going up from Leavenworth on any other street for 6 or 8 blocks either way, it is impossible to get to the garages. Also, in slippery weather the only way to get out would be to go north to Dewey Avenue, and when the avenue is reached, at the turn there is a slight grade on Thirty-ninth Street. Mr. Hanson testified: "* * * my tenants and myself in slippery weather have to go south on 39th which is down hill and we do not have any trouble." A dead-end street will be created adjacent to the property which would create a hazard in the event children would play in the street. A tenant has threatened to vacate in the event the street is closed, however, he testified that tenants for his apartments were not hard to obtain.

Clyde W. Drew testified that he resides at 3901 Dewey Avenue on the southwest corner of the intersection of Thirty-ninth Street and Dewey Avenue and has since April 1942; that the property, in which he testified he had a life estate, is owned by Louis and

Jack Drew, his sons; that he drives an automobile and uses Thirty-ninth Street very often; and that the garage on his property sits on the south 68 feet, which is owned by his sons in connection with Eugenie Whitmore. The entrance is 140 to 150 feet south of Dewey Avenue. Thirty-ninth Street at the point of the proposed vacation comes to the south edge of his property. Closing Thirty-ninth Street would affect this property and place it on a dead-end street with a sinkhole that is bad for traffic. He makes more use of Thirty-ninth Street in inclement weather than at other times, that is, if the pavement is slippery at all.

E. R. Herrick and his wife Blanche Herrick live at 602 South Thirty-eighth Avenue, on the southwest corner of Thirty-eighth Avenue and Jackson Street. The property is in the name of Jane R. Herrick, a daughter. These witnesses have a life estate in it. They are in the real estate business, and testified that the closing of the streets and alley as proposed by the city would lessen the value of the property, because it would create a dead-end street, and property on such a street is of less value than on other streets. This dead-end street would be at the rear of their property. Closing of Jackson Street from a point midway between Thirty-eighth Avenue and Thirty-ninth Street would adversely affect this property and lessen its value; and would leave it on a dead-end street at the rear of this property. Jackson Street to Thirty-ninth Street, then Thirty-ninth Street south, is used for ingress and egress in the winter time when it is slippery. Thirty-eighth Avenue is very steep from Jones Street to Leavenworth Street.

Ralph S. Tully resides at 604 South Thirty-eighth Avenue on the west side of the street between Jones and Jackson Streets. The property is listed in the names of Madge M. Tully and Ralph S. Tully, and is residence property. The closing of Jackson Street, Thirty-ninth Street, and the alley would adversely affect this witness and his property. It would place him between a

dead-end street and a dead-end alley. He contemplated rebuilding his garage so that he would use the entrance on Jackson Street and the alley to the rear of his property. He uses Jackson Street to Thirty-ninth Street, and Thirty-ninth Street, particularly in inclement weather because the grade on Thirty-eighth Avenue from Leavenworth Street is steeper than the grade on Thirty-ninth Street.

Several witnesses engaged in business in the vicinity testified in behalf of the appellants. The effect of the testimony of these witnesses is that due to the grade on Thirty-ninth Street being less than that on the other streets in the immediate vicinity, Thirty-ninth Street is used continuously in bad weather as, when it is slippery, trucks and commercial vehicles can travel it much more easily. There is also some evidence that the vacation of the streets and alley in question would have a tendency to eliminate a certain degree of traffic that might ordinarily use Thirty-ninth Street to have access to some of these business enterprises. There is, in addition, evidence to the contrary.

In addition, there is evidence to the effect that there is an increase in automobile registrations in the city of Omaha that might create a traffic problem. However, it is apparent from the testimony that such problem has not affected the market value of the appellants' residences in this vicinity. There is also evidence to the effect that creation of a dead-end street lessens the value of the property and creates, especially, a traffic hazard to children. In opposition to this there is evidence of an experienced realtor and tax appraiser to the effect that the proposed vacation of the streets and alley would not affect the market value of appellants' property, and that there is access to other streets for ingress and egress that is commensurate with that of the public generally.

The appellants contend that the ordinances in the instant case serve a private corporation and not a public

need, therefore they are void and the city council, in adopting them, acted arbitrarily and unreasonably, and abused its discretion.

The stipulation of facts discloses that this home serves a public need, and has for years, and is a public, charitable, and educational institution as distinguished from a private institution.

The following authority is applicable: "Under the proofs appearing in the record, we are not able to say that the council acted arbitrarily, and abused the discretion vested in them by the statute, in vacating the streets, even though it may have resulted in benefit to the defendant. Such an institution as is maintained by the defendant has more than a mere personal pecuniary object. They are regarded as being of general benefit to the whole community, both city and surrounding country." Karlin v. Franciscan Sisterhood, 109 Neb. 711, 192 N. W. 122.

Exercise of discretionary power of municipality to which power has been delegated to vacate streets is not ordinarily subject to judicial review, unless there has been abuse of discretion, fraud, or glaring informality or illegality in proceedings, or absence of jurisdiction. See Roney Investment Co. v. City of Miami Beach, 127 Fla. 773, 174 So. 26.

"To overturn a city ordinance on the ground that it is unreasonable and arbitrary or that it invades private rights, the evidence of such facts should be clear and satisfactory." State ex rel. Krittenbrink v. Withnell, 91 Neb. 101, 135 N. W. 376, 40 L. R. A. N. S. 898. See, also, Bethel M. E. Church v. City of Greenville, 211 S. C. 442, 45 S. E. 2d 841.

The fact that the lot owner may be inconvenienced or that he may have to go a more roundabout way to reach certain points, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. See 11 McQuillin, Municipal Corporations (3d ed.), § 30.194, p. 146.

It is well settled that an owner is not entitled to re-cover damages unless he has sustained an injury different in kind and not merely in degree from that suffered by the public at large. See 11 McQuillin, Municipal Corporations (3d ed.), § 30.192, p. 138; 18 Am. Jur., Eminent Domain, § 224, p. 856; Scully v. Central Nebraska Public Power & Irr. Dist., 143 Neb. 184, 9 N. W. 2d 207; City of Winchester v. Ring, 312 Ill. 544, 144 N. E. 333, 36 A. L. R. 520; Hebb v. City of Bartow, 142 Fla. 78, 194 So. 312; Van Valkenberg v. Rutherford, 92 Neb. 803, 139 N. W. 652; Enders v. Friday, 78 Neb. 510, 111 N. W. 140; Lee v. City of McCook, 82 Neb. 26, 116 N. W. 955.

A property owner whose property does not abut upon a portion of a street which it is proposed to vacate or which is obstructed has no right of action to restrain the vacation or prevent the obstruction unless the access to his property is interfered with and he suffers a special or peculiar damage differing in kind from that of the general public. The great majority of American courts hold that a property owner does not come within the rule of compensation unless his property abuts upon or touches that part of the street which is actually vacated, or a special or peculiar damage is made to appear, or, to state the proposition in its elementary form, unless his injury differs in kind rather than in degree from that suffered by the general public. See, Kemp v. City of Seattle, 149 Wash. 197, 270 P. 431; Hartwell Iron Works v. Missouri, K. T. R. R. Co. (Tex. Civ. App.), 56 S. W. 2d 922.

In Wilson v. Kansas City (Mo.), 162 S. W. 2d 802, the court said that an owner of land, not abutting on closed section of vacated street, so that his right of ingress and egress is not injured by vacation of street because he still has reasonable access to general system of streets, is not entitled to compensation for injury, caused by street vacation, to his property right in the street. Inconvenience in getting to other streets is not an in-

jury special and peculiar to the appellants but equally affects all who exercise their right to use it. So it is with any claimed potential uses to which the property might be put—other landowners on the street suffer the same potential loss or injury. Doubtless the vacation or discontinuation of a street may and often does result in depreciating the value of property on it but that does not of itself constitute such a special injury as entitles him to damages. Traffic, great or small, is merely incident of streets and highways and cannot be considered as element of damages or benefits to realty from vacation of street. See, also, Ponischil v. Hoquiam Sash & Door Co., 41 Wash. 303, 83 P. 316; Tomazewski v. Palmer Bee Co., 223 Mich. 565, 194 N. W. 571.

We believe the following authorities are also applicable.

A party seeking an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief, and injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. See, Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889; Gering Irr. Dist. v. Mitchell Irr. Dist., 141 Neb. 344, 3 N. W. 2d 566.

We believe the rights of the owners and parties interested in property that may be affected by the vacation are protected by the clear language of section 14-375, R. S. 1943, which provides that a committee of three members of the council shall assess the damages after notice and file their report in writing with the city clerk. In addition, provision for appeal to the district court is made.

The appellants' right to injunction is not clear. They prove no irreparable damage or any special damage, and make no pretense of proving the remedy at law is inadequate. These nonabutting property owners' rights of ingress and egress are not taken away, and the injuries they suffer, if any, differ only in degree, and not in kind,.

from that of the general public. They have suffered no irreparable damage under this rule.

Generally, the court will not declare a statute unconstitutional at the suit of one who is not injuriously affected thereby. See State ex rel. Ridgell v. Hall, on rehearing, 99 Neb. 95, 156 N. W. 16.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.