State of Nebraska, Department of Roads, et al., appellees, v. Nickel Grain Co., Inc., appellant, Impleaded with Donald Nickel et al., appellees.

153 N. W. 2d 727

Filed October 27, 1967. No. 36627.

William S. Padley, for appellant.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., and Martin & Stirtz, for appellees State, et al.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from the entry of a permanent injunction in favor of appellee, State of Nebraska, Department of Roads, and appellee-intervener, Village of Axtell, Nebraska, enjoining appellants from proceeding with an inverse condemnation proceeding for damages to a leasehold interest of Nickel Grain Co., Inc., arising out of the reconstruction of U. S. Highway Nos. 6 and 34 through Axtell, Nebraska.

For convenience hereinafter, the appellee will be referred to as State; the appellee-intervener as village; and the Nickel Grain Co., Inc., as Nickels.

To understand the present controversy, it is necessary that we briefly review certain facts. Condemnation proceedings were started by State against Nickel-Bessel Grain Company, of which Nickels is the corporate successor, for the condemnation of certain property adjoining the highway. By stipulation in that condemnation, certain leasehold interests of Nickels on property

owned by the Chicago, Burlington & Quincy Railroad Company, hereinafter referred to as C. B. & Q., was excepted from the condemnation. An award was made in the condemnation of $3,000, which amount was paid to Nickels.

In the construction of the highway, State entered upon the property leased by Nickels from C. B. & Q., changing the grade and use of a part of the premises, to the damage of Nickels. The State had contracted with C. B. & Q. as to the property but had no contract with Nickels, who held the leasehold interest. Subsequently, Nickels filed a claim with the Sundry Claims Board for damages sustained by the appropriation of property covered by the lease and not included in said condemnation.

The itemization provided at the hearing before the Salaries and Claims Committee of the Legislature indicated the total damages claimed to be $156,705.25, broken down as follows:

"RECAPITULATION OF DAMAGES FOR
DESTRUCTION OF BUSINESS

"1. Reconstruction of 12,000 bu. wet grain storage tank at only feasible location, inside grain warehouse _____$8,970.00
Less: condemnation award (3,000) minus value of tank and removal cost (1,125) _____1,875.00

$7,095.00

"2. Repair of dump pit, boot pit, conveyor machinery (leg), and concrete floor in scale house _____          9,890.00

"3. Construction of corrective drainage to prevent flooding of pits and warehouse caused by highway change

| | |
|---|---:|
| of grade with inadequate drainage _____ | 9,954.00 |
| "4. Loss of profits for 1-year period 5-15-64 to 5-14-65 (based on annual profit, 7-1-62 to 6-30-63) _____ | 38,076.14 |
| "5. Continuing expenses (net loss) of corporation during period of 5-15-64 to 5-14-65 when facility was non-operational _____ | 35,771.04 |

"6. Bank loans called, with 5-year term otherwise remaining except for default

| State Securities Company | $55,119.07 |
|---|---:|
| Platte Valley State Bank | 20,000.00 |
| Total _____ | $75,119.07 |

"Less: Interest for one year recoverable under item 5, and principal for one year recoverable under item 4 _____$19,200.00

55,919.07

"TOTAL DAMAGES            $156,705.25"

Claimant was allowed $26,939, which is the exact amount of the first three items listed in the claim. A voucher, with the following information, was forwarded by State to Nickels and returned signed by the president of Nickels on behalf of Nickels:

"Property Damage, Highway Construction as evidenced by the claim filed with the Sundry Claims Board and allowed by the

| | |
|---|---|
| Legislature in LB 905—75th Session | 26,939.00 |

"Upon receipt of warrant in the amount of $26,939.00, I hereby release the State of Nebraska from any further liability with reference to within claim or for any other damages resulting from taking of right of way, highway construction, or any change of grade or drainage in the vicinity of or upon land belonging to, leased, or claimed by the Nickel Grain Co., Inc., or immediately adjacent thereto in Axtell, Nebraska, and relocated Highway US 6 and 34."

Upon return of the voucher, a warrant was issued for said amount and cashed by Nickels. Subsequently, Nickels filed a petition with the county judge of Kearney County against State, village, and C. B. & Q., seeking inverse condemnation for damages sustained by the interference with its leasehold rights in C. B. & Q. property, pursuant to section 76-705, R. R. S. 1943. The present action was brought against Nickels, the county judge of Kearney County, and the appraisers to enjoin the prosecution of the condemnation proceeding.

The primary question herein is whether injunction is a proper remedy. In Consumers Public Power Dist. v. Eldred, 146 Neb. 926, 22 N. W. 2d 188, we said: "This court as well as the courts of other jurisdictions is committed to the rule that injunction is a proper action in which to present the question of unlawful or improper exercise of the power of eminent domain."

Nickels questions the propriety of injunctive procedure herein. There is no merit to his assignment. The power conferred on the county judge by the eminent domain act and the duties required of him by that act are

not judicial powers and duties but are purely ministerial in character. Weiner v. State, 179 Neb. 297, 137 N. W. 2d 852.

The specific complaint against village is that it permitted its streets to be closed without any appropriate procedure of any nature. Nickels lost access from two streets which formerly crossed the highway because of the highway median. However, an access road between the highway and those streets provided access to Nickels from two adjoining streets which crossed the highway. Section 76-705, R. R. S. 1943, does not cover this situation. The village could not be considered a condemner even if it closed or vacated the streets. The vacation or closing of a street is not analogous to an eminent domain proceeding to appropriate private property for public use. See Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622.

Further, as we said in Painter v. State, 177 Neb. 905, 131 N. W. 2d 587: "The fact that a property owner or those desiring to enter his property may have to travel a circuitous and longer route to reach certain points because of traffic regulations changing the direction of traffic does not give rise to an injury different in kind from that sustained by the general public, and affords no basis for an action for damages."

The attempt to apply inverse condemnation as to village was improper and injunction was the proper remedy.

It is likewise obvious that State had defenses which would be initially unavailable, such as claims for damage items which are not compensable in a condemnation proceeding. It also is apparent that there is an improper joinder of parties. The action against C. B. & Q. could only involve damages for breach of a lease. The action against village complains of acts which are not cognizable in an eminent domain proceeding. However, the principal defense of State to the petition is its contention that Nickels has released State from any further lia-

bility for the acts complained of and that the matter is fully settled.

The State appropriated property of Nickels not involved in the prior condemnation. This was done without permission of Nickels, who had an interest which could only be acquired by condemnation or agreement. Nickels elected to file a claim with the Sundry Claims Board, which board made a partial allowance of Nickels' claimed damages. Nickels accepted the award made and executed the release set out above, which certainly purports to be a full and complete release of all damage claims resulting from the highway construction as to any land owned, leased, or claimed by Nickels.

What we said in Larson v. Keith, 122 Neb. 216, 239 N. W. 817, is appropriate here: "It seems to us that the law governing transactions of this character is so well settled it hardly admits of an argument. * * *

" 'Wherein a certain sum of money is tendered by a debtor to a creditor on the condition that he accept it in full satisfaction of his demands, the sum due being in dispute, the creditor must either refuse the tender or accept it. * * * If he accepts it, he accepts the conditions also, notwithstanding any protest.' "

Nickels' position is that the allowance made by the Sundry Claims Board covered only the first three items of its claim, and left the other elements of damage for future determination. However, Nickels accepted the award without complaint and with full knowledge that State was tendering the amount in full settlement of any and all claims.

In Larson v. Keith, 122 Neb. 221, 239 N. W. 819, we held: "One accepting a check, knowing it is offered in full settlement on an account or claim, is estopped to claim that deductions in the account were improperly made."

Nickels' claim was allowed by Laws 1965, chapter 358, page 1031. Section 2 of said legislative bill reads as follows: "Sec. 2. The Auditor of Public Accounts is

hereby authorized and directed to draw his warrants, upon the funds in the state treasury herein enumerated, in favor of the several beneficiaries named in this act for the amount set opposite their respective names upon the presentation of proper vouchers therefor. *The several amounts herein appropriated shall be in full of any and all claims of every character and kind owing by the State of Nebraska to each of the beneficiaries respectively in whose favor the appropriations are made. The Auditor of Public Accounts shall not deliver any warrant for any item herein appropriated until a receipt in full shall have been filed by each of the beneficiaries respectively;* and, upon presentation of the warrants aforesaid, the State Treasurer is hereby directed to pay the same out of money in the General Fund or out of money in other funds, as indicated herein, not otherwise appropriated." (Italics supplied.)

Finally, we do not agree with Nickels' contention that State had an adequate remedy at law. In Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150, we held: "An adequate remedy at law means a remedy which is plain and complete, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." To permit the board of appraisers to make an award and to require State to appeal from that award, under the circumstances in this case, would ignore the realities of the situation. Without passing upon the applicability of section 76-705, R. R. S. 1943, we determine that injunction was a proper remedy herein.

For the reasons set out above, the judgment of the trial court is affirmed.

AFFIRMED.