RALPH LARSON ET AL., APPELLANTS, v. BOARD OF REGENTS
OF THE UNIVERSITY OF NEBRASKA ET AL., APPELLEES.
204 N. W. 2d 568

Filed February 23, 1973.    No. 38593.

Phillips & Murphy, for appellants.

Cline, Williams, Wright, Johnson & Oldfather, Alan E. Peterson, Healey, Healey, Brown & Burchard, and Douglas L. Kluender, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

This was an action to enjoin the use of fees collected from students at the University of Nebraska for purposes alleged to be illegal. The plaintiffs are students at the University. The defendants are the Board of Regents of the University; the Association of Students of the University of Nebraska (ASUN); and various officials of the University or the State of Nebraska.

The trial court sustained motions for summary judgment and dismissed the action. The plaintiffs appeal.

A summary judgment is proper where there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law. § 25-1332, R. R. S. 1943.

The fees in question are mandatory fees collected from all students enrolled as full-time students at the University. During the fall semester, 1971, fees amounting to $51.50 per student were collected. Of this amount $42 is not in question. In dispute are the following allocations, per student: $1.25 to the Daily Nebraskan; $ .30 to the ASUN; $6 to the speakers program sponsored by the Nebraska Union; and $1.95 to the "unallocated fee fund." The plaintiffs contend the defendants had no right to impose, collect, and spend mandatory student fees for these purposes.

The Daily Nebraskan is a campus newspaper. The ASUN is the student government organization at the University. The speakers program sponsored by the Nebraska Union is a lecture and discussion program carried out by bringing various speakers to the campus.

The plaintiffs' principal contention is that their constitutional rights are being violated because the mandatory fee system requires them to contribute to the support of political views and doctrines with which they disagree. They rely, primarily, on International Assn. of Machinists v. Street, 367 U. S. 740, 81 S. Ct. 1784, 6 L. Ed. 2d 1141.

In the Street case, the Supreme Court of Georgia had held that a union shop agreement, negotiated pursuant to the Railway Labor Act, was invalid because it required employees of the railroad to pay dues which were used in part to support political and economic programs and candidates for public office which some of the employees opposed. On appeal, the judgment was reversed by the United States Supreme Court on the ground that the Railway Labor Act did not authorize a union to spend an employee's money, over his objection, for political causes which he opposed.

The Street case did not establish the proposition upon which the plaintiffs rely, but some of the opinions

in that case may be interpreted as recognizing and supporting the proposition. See, also, Hanson v. Union Pacific R.R. Co., 160 Neb. 669, 71 N. W. 2d 526, reversed in Railway Employes' Dept. v. Hanson, 351 U. S. 225, 76 S. Ct. 714, 100 L. Ed. 1112.

But if we assume that a labor union under a union shop agreement has no constitutional right to use a part of the members' dues to support political policies or candidates that the members oppose, that does not establish the plaintiffs' right to relief in this case. There is an important distinction between the political activities of a labor union and extracurricular activities at a university.

The University officials determined, as they had a right to do, that additional services and facilities were essential to the creation of a better educational environment. As a result, a program was developed which is financed by mandatory student fees. The speakers program sponsored by the Nebraska Union is a part of this program and is a noncredit or extracurricular educational service furnished to the students. The conferences sponsored by the ASUN are another part of this program.

The University officials further determined that the acquisition, understanding, and interpreting of knowledge could be facilitated by the study and evaluation of controversial positions. As might be expected, some of the speakers participating in the program from time to time have expressed views that are not acceptable to many of the students, including the plaintiffs. But the fact that the plaintiffs may disagree with the views expressed by some of the speakers brought to the campus is not controlling. If such views are expressed only as a part of the exchange of ideas and there is no limitation or control imposed so that only one point of view is expressed through the program, there is no violation of the constitutional rights of the plaintiffs. Within reasonable limits, it is appropriate that many

different points of view be presented to the students. As we view the record, there does not appear to be a genuine issue as to any material fact in this regard. The plaintiffs' evidence does not support their assertion that the entire activity has been directed toward a particular point of view.

The situation with respect to the Daily Nebraskan is somewhat different. The staff of the paper is made up of students, but the paper has no connection with the Journalism Department of the University. The business affairs of the paper are controlled by the Publications Board of the University but the paper is editorially independent.

The paper derives about one-half of its support from student fees. It appears to enjoy a campus monopoly although limited distribution facilities are available for other student newspapers. The combination of limited supervision and substantial financial subsidy would seem to create a situation readily subject to abuse. However, the issues of the paper which the plaintiffs offered in evidence at the hearing on the motions do not appear to support their contention that the paper stresses only one political point of view.

The mandatory fees that are involved in this case are not private funds. § 85-125, R. R. S. 1943. They are public funds subject to many restrictions as to how they may be expended. We do not question the right of the University to furnish partial support for a campus newspaper from the student fees, but such a newspaper should not be allowed to become a vehicle for expressing a single political point of view. Where a university newspaper is supported by mandatory student fees, or by other university funds, reasonable supervision is required by the university authorities with a view to promoting and permitting the reflection of a broad spectrum of university life and reasonable representation of the various aspects of student thought and action.

Much of the plaintiffs' evidence centers around three

events: A student "strike" against the foreign policy of the United States in May 1970; a "Time-Out Conference on Human Sexuality"; and a birth control "handbook" purchased by the ASUN but, apparently, not distributed by ASUN. These incidents might be said to indicate a lack of sound judgment in some respects but they hardly furnish a basis for injunctive relief against the defendants as requested by the plaintiffs.

There are other considerations that enter into the determination of this case. Injunction is an extraordinary remedy and ordinarily will not be granted except in a clear case where there is an actual and substantial injury. 42 Am. Jur. 2d, Injunctions, § 23, p. 755. The right must be clear and the damage irreparable. Muchemore v. Heflin, 187 Neb. 217, 188 N. W. 2d 713. Relief may be denied if in the discretion of the court it is likely to inflict greater injury than the grievance complained of. City of Omaha v. Rubin, 177 Neb. 314, 128 N. W. 2d 814.

The judgment of the district court is affirmed.

AFFIRMED.