ED STEFFEN, APPELLANT, v. COUNTY OF CUMING, NEBRASKA, ET AL., APPELLEES.

238 N. W. 2d 890

Filed February 19, 1976. No. 40000.

Joseph M. Dea and Hurt & Gallant, for appellant.

John M. Thor and Moodie & Moodie, for appellees.

Heard before SPENCER, NEWTON, AND CLINTON, JJ., and HENDRIX and BUCKLEY, District Judges.

HENDRIX, District Judge.

Ed Steffen, plaintiff, appeals from the judgment of the District Court for Cuming County, Nebraska, denying money damages and an injunction against the County of Cuming, Nebraska; Logan Township, Cuming County, Nebraska; and Sherman Township, Cuming County, Nebraska, defendants. We affirm.

The plaintiff owns and resides on a 320-acre farm in Logan Township, Cuming County, Nebraska, about 4 miles north and 1 3/4 miles west of West Point, Nebraska. The farm and the surrounding lands make up the situs of the controversy. We are including a plat of the area, which will be a part of this opinion.

There is an east-west road running along the south line of plaintiff's property and to the east thereof. This road divides Logan Township on the north and Sherman Township on the south. Plum Creek runs through the plaintiff's land from northwest to southeast. It is the principal watercourse of the area and continually carries waterflow. To the immediate east of plaintiff's land is a man-made ditch running from north to south. It has been in existence for perhaps 40 years and carries runoff water south to Plum Creek. One-half mile to the east of plaintiff's land and the man-made ditch there is a north-south road which intersects the east-west road. For many years it has been the practice for Logan Township to maintain the road east of this intersection, and for Sherman Township to maintain the road west of this intersection. Felix Creek, which carries water intermittently, approaches the east-west road from the northeast about 3/8 of a mile east of the road intersection. Felix Creek goes south under the east-

west road at B6, runs back north and under the east-west road at B5, runs west under the north-south road at B4, and runs back south to the east-west road at B3. In 1963, defendant Sherman Township did work west of B3. The evidence as to work done is somewhat conflicting. Some of the evidence is to the effect that the north road ditch was only cleaned and widened beginning at a point 100 feet west of B3 and running to the west. Some of the evidence is to the effect that the ditch was cleaned, widened, and deepened, and the road raised west of B3. Plaintiff claims that this work diverted the waters of Felix Creek at a point near B3 by which waters were caused to flow west in the north road ditch until they spilled out to the north upon the pasture of the plaintiff causing damage in the amount of $5,600 and irreparable injury entitling plaintiff to an injunction. The defendants deny that the work caused any flooding or damages.

At the outset, we will dispose of the monetary damage question. Proof of damages was confined to evidence that two or three times a year the plaintiff's pasture was flooded causing silt to be deposited on the grass. Later, the silt would be washed off by rain. On one occasion the ASC Office paid an unnamed amount for flood damage. This does not establish damages from which this court can allow any recovery in money. The rules regarding crop damage by flood were announced in Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551. These rules require that the measure of damages to a perennial crop is the difference between the value of the land immediately before the injury with the crop growing thereon, and the value of the land immediately after the destruction of the crop. As to any crop that may have been injured, but not entirely destroyed, the measure of damages is the difference between the value at maturity of the probable crop if there had been no injury, and the value of the actual crop at the time injured less the expense of fitting for

market that portion of the probable crop which was prevented from maturing. The evidence in this case does not establish a before and after value of either the land or the crop.

Moving to the injunction question, it is well-established that a party seeking an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief, and an injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. Shepardson v. Chicago, B. & Q. R.R. Co., 160 Neb. 127, 69 N. W. 2d 376.

There is no clear showing that the defendants diverted waters at Felix Creek at B3 by road and ditch work in 1963. During its history, Felix Creek has run under the road at B3 and south to Plum Creek. While plaintiff does not subscribe to such position, the weight of the evidence establishes that prior to the work by defendant Sherman Township in 1963, the principal waters of Felix Creek had already been diverted to the north road ditch and they were then running toward B2, the man-made ditch and plaintiff's farm. Albert Stuthman, formerly a member of the Sherman Township board, so testified. Mr. Batenhorst, a farmer of the area, so testified. Mr. Weiler, a Cuming County supervisor, so testified. The plaintiff relies upon his own testimony, upon the testimony of Raymond Bailey, Cuming County surveyor, and upon the testimony of his son, Donald Steffen, to establish that the principal waters of Felix Creek were running south at B3 in 1963 just before the work by Sherman Township. On direct examination, the plaintiff did answer two questions to this effect, but on cross-examination he stated that the diversion had already been made in 1963 and the following appears:

"Q   Had it been running along the road since 1959?
A   Approximately.
Q   Well, what did—what they did in 1963, how did that

effect it? Did that change the course of the water?

A No.

Q It didn't? It still continued to run west?

A Right. They never—there was nothing there to stop it from going west."

Reliance upon Mr. Bailey's testimony in that regard appears to stem from an interpretation of his answer to a question on direct examination as to whether the water ran to the north road ditch in 1963. He responded, " '63 yes, it done that there in '63, but years before that it hadn't run there." That he did not mean that the change was made in 1963 is made clear by his later testimony on both direct and cross-examination where he stated definitely that he did not know when the change took place. Mr. Donald Steffen did state that prior to the road and ditch work in 1963 the water ran south at B3, but upon cross-examination stated that the plank work (not done by any of the defendants) caused the waters to run west. Since the evidence does not sustain the position that the diversion was accomplished by the work in 1963, it is only logical that the work done by the defendant Sherman Township was to take care of an existing problem, and that a new one was not created. Plaintiff additionally claims a judicial admission as to the flow of waters south from B3. Neither party holds the position that quantities of water now flow south from B3, and we deem this to be only an allegation and admission of the location of Felix Creek.

There are other difficulties with finding that the activity of the defendant Sherman Township in 1963 was the proximate cause, or a proximately contributing cause, of any damage which may have occurred to plaintiff's pasture. For one, the record reveals that there were a great number of situations and activities at work in the area which caused water to be on plaintiff's land. These were waters in the man-made ditch, flooding from Plum Creek, and from changes made by

Mr. Miller, Mr. Englemeier, Mr. Keller, and Mr. Batenhorst. There was no clear showing that these other factors were not the sole cause of any flooding which may have occurred. Other difficulties concern the lack of a clear demarcation between flooding before and after the work in 1963, and the failure of witnesses to delineate the means and volume of any diversion of waters.

Finally, it should be noted that the trial court made an inspection of the area. In the appeal of an equity case, the appellate court will give consideration to the fact that the trial court inspected the premises. Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

AFFIRMED.