CATHER & SONS CONSTRUCTION, INC., APPELLANT, v. CITY OF LINCOLN, NEBRASKA, APPELLEE, THE GOODYEAR TIRE & RUBBER COMPANY, INTERVENER-APPELLEE.

264 N. W. 2d 413

Filed April 5, 1978. No. 41263.

Edward F. Carter, Jr., of Barney & Carter, for appellant.

Charles D. Humble and William D. Austin, for appellee.

J. Taylor Greer of Woods, Aitken, Smith, Greer, Overcash & Spangler, for intervener-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

This action involves a dispute arising out of the vacation of portions of streets and an alley by the City of Lincoln, defendant and appellee herein, and the sale of the vacated property by the City to The Goodyear Tire & Rubber Company ("Goodyear"), intervenor and appellee herein. The plaintiff and appellant, Cather & Sons Construction, Inc. ("Cather"), objected to the vacation and sale at a public hearing before the city council of Lincoln. Over Cather's objections, the council, by unanimous vote, passed ordinances authorizing the vacation and sale of the property. Cather then filed a petition on appeal in the District Court for Lancaster County pursuant to sections 15-1201 to 15-1205, R. R. S. 1943.

In its petition on appeal in the District Court, Cather set forth three separate causes of action. In the first cause of action Cather alleged that the vacation of the streets was not in the public interest and therefore invalid because it blocked traffic flow, diverted commercial and industrial traffic onto streets in residential areas, and deprived Cather means of ingress to and egress from its property. In the second cause of action Cather alleged that the consideration paid by Goodyear to the City of Lincoln, for the vacated property, was inadequate and less than its true market value. In the third cause of action Cather alleged that the vacation and sale denied it reasonably convenient ingress to and egress from its property, that Cather had not consented to the vacation, and that the City had not condemned Cather's rights with respect to reasonable ingress and egress, as required by section 15-702.03, R. R. S. 1943. Cather alleged its property abutted the vacated land. It prayed that the District Court find the ordinances authorizing the vacation and sale null and void, and enjoin the implementation of those ordinances. In the alternative, Cather prayed that the court appoint appraisers in condemnation to determine the value of the right of access taken from it by the City as a result of the vacation, and to award damages therefor. Goodyear was permitted to intervene in the action, and both it and the City of Lincoln denied the material allegations of Cather's petition on file.

After presentation of evidence by the parties and an inspection of the land involved in the vacation and sale, the trial court concluded that Cather's claims were not meritorious for several reasons: First, because the court found that Cather did not have standing to maintain its first and third causes of action for the reason it was not an owner of property abutting the vacated land; second, the court found that Cather had not suffered damage different

in kind from that suffered by the general public as a result of the vacation, and that Cather still has reasonable access to the street system and reasonable ingress to and egress from its property; and, third, the trial court concluded that the evidence was not sufficient to sustain a finding that the purchase price paid by Goodyear to the City for the vacated land was the product of fraud, illegality, or a clear abuse of discretion on the part of the city council. Finally, the court concluded that Cather's third cause of action was not properly raised in the proceeding because it interjected a new matter into the appeal that was not raised before the city council at the time the ordinances were discussed and passed. Cather's petition on appeal was dismissed by the District Court.

Cather has now appealed to this court, contending that the findings of the trial court were erroneous, and that the trial court erred in failing to grant the relief prayed for in Cather's petition on appeal. We affirm the dismissal of Cather's petition on appeal.

The facts relevant to this appeal are as follows. Goodyear owns land on the west side of North 56th Street between Ballard and Morrill Avenues in Lincoln, Nebraska. In February 1974, Goodyear and other adjacent property owners petitioned the city council of Lincoln to vacate North 56th Street between those avenues, a small portion of the avenues immediately to the east of North 56th Street, and a portion of an alley. Goodyear desired to purchase the property, if vacated, for the purpose of building a new warehouse which could be served by existing railroad facilities. Various city departments made reports and recommendations concerning the proposed vacation and sale. The Lincoln Lancaster Planning Commission and the Director of the Department of Public Works recommended approval of the vacation, subject to conditions concerning the relocation of utilities and the construction of cul-de-

sacs or other acceptable vehicle "turnarounds" at what would become the stub ends of Ballard and Morrill Avenues, and North 56th Street. Ordinances authorizing the vacation and sale were presented to the city council, which, after a public hearing, unanimously voted to pass the ordinances. The purchase price of the vacated land was $9,434.80. One week after the ordinances were passed, Cather offered to purchase the vacated property for the sum of $30,000, which offer was refused by the council. The City conveyed the vacated land to Goodyear, which has constructed a building thereon.

Cather's objections to the vacation, as set forth both at the public hearing held before the city council and in the District Court, were that it denied reasonable access to Cather's property, that it forced industrial traffic onto streets in residential neighborhoods, and that it denied Cather the most convenient route to its property. A description of Cather's property is required to clarify these claims.

Cather owns a triangular shaped plot of land, the south edge of which borders on Ballard Avenue. The land comes to a point approximately 50 feet east of the northeast corner of the intersection of North 56th Street and Ballard Avenue. There is a driveway, hereinafter referred to as the "southwest driveway," which provides access to Cather's property from Ballard Avenue at this point. This is one of several driveways on the Cather property, which has been used for the operation of an asphalt batch plant. Large transport trucks which deliver liquid asphalt to a storage tank on the Cather property have used the southwest driveway as a means of ingress. Before the vacation, the trucks would usually proceed north on North 56th Street, turn right on to Ballard Avenue, and enter the Cather property at the southwest driveway. This means of ingress was particularly useful to Cather due to the location of the storage tank, as the trucks could enter the

Cather property via the southwest driveway, be in proper position for unloading, and then leave the property via an exit on the opposite end of the property without turning around and without engaging in any difficult maneuvers.

It is undisputed that Cather's property does not "front," nor is it adjacent to, the vacated portions of Ballard Avenue and North 56th Street. Only 50 feet of Ballard Avenue to the east of North 56th Street was vacated, precisely to the point where the south edge of the Cather property begins to border on Ballard Avenue. The southwest corner of the Cather property does touch, at a single point, the northeast corner of the vacated portion of Ballard Avenue. The vacation did not, therefore, block any driveway providing access to the Cather property. The result of the vacation was that Cather's southwest driveway is now at the west end of Ballard Avenue, what has become a "dead end," whereas previously vehicles could approach the southwest driveway from either direction.

There was a dispute in the evidence regarding the effect of the vacation on Cather's use of its southwest driveway. Although no portion of Ballard Avenue in front of that driveway was vacated, the owners of Cather testified that the large asphalt transport trucks, now forced to approach the driveway from the east on Ballard Avenue, could not make the turn off Ballard Avenue due to inadequate turning space. They stated that after the vacation Cather was forced to have the trucks back onto its property from its northeast driveway. It was undisputed that no vehicles other than the large asphalt trucks had difficulty in using the southwest driveway after the vacation. During the construction season, approximately two such trucks delivered liquid asphalt to Cather each week.

Goodyear and the City adduced evidence that the large asphalt trucks could still use the southwest

driveway after the vacation. At the public hearing, Goodyear committed itself to providing a turning area for the large trucks to enable them to utilize the southwest driveway as a means of ingress to the Cather property. Goodyear offered Cather a written license which would have permitted Cather to use a suitable portion of the vacated land as a turning area, but Cather refused to accept the license. Although Goodyear stood ready to do whatever was necessary to enable Cather to utilize the southwest driveway as a means of ingress for the asphalt trucks, Cather made no serious or extended attempts to do so. The evidence indicates that the asphalt trucks could enter the southwest driveway with no difficulty if a portion of the vacated land was used, and that they could possibly enter directly off Ballard Avenue without using any portion of the vacated land if Cather gave up one or more of its parking spaces located immediately to the east of the southwest driveway.

No extensive evidence was presented regarding the effect of the vacation with respect to diversion of industrial traffic onto streets in residential areas. The city traffic engineer stated that there were both benefits and detriments caused by the vacation with respect to traffic flow, and that residential areas were affected regardless of whether North 56th Street remained open or was vacated. Although the owners of Cather correctly stated that industrial traffic could no longer approach the Cather property via North 56th Street, they did not present evidence that feasible, alternative routes were unavailable. The city traffic engineer stated that there were three alternative routes for traffic to reach the Cather property after the vacation. Insofar as residential areas are concerned, no residents, who might have been affected by any diversion of industrial traffic, testified at trial, nor did they appear at the public hearing on the ordinances.

Cather did not attempt to prove the amount of damages it allegedly sustained as a result of the vacation. Witnesses testifying on behalf of Cather stated only that it had been damaged, as a result of delays caused in its operation, due to the loss of North 56th Street as an approach route for the asphalt transport trucks. There was no evidence that Cather lost business as a result of the vacation, or that their shipping costs for asphalt increased. Since the vacation, Cather has moved its batch plant to a different location, allegedly because of difficulties caused by the vacation.

In support of its claim that the purchase price paid by Goodyear for the vacated land was inadequate, Cather presented the testimony of a real estate appraiser. He testified that the land was worth 50 cents per square foot, or $23,577, and that the paving on the vacated land was worth approximately $16,000. Therefore he valued the land at approximately $39,000. The property manager of Lincoln, a licensed appraiser, assessed the vacated land as being worth 60 cents per square foot, or approximately $29,000. In determining the sale price, however, he deducted 40 cents per square foot to compensate for the cost of removing the paving, and relocation of water and sewer lines. By this method of calculation, he reached the sale price of $9,434.80. Goodyear, in fact, expended more than $30,000 in relocating and replacing water and sewer lines. Although Cather offered to purchase the vacated land for $30,000 after the ordinances were passed, the record does not reflect that the Cather offer included a promise with respect to the relocation or replacement of existing utilities, or that the Cather purchase would bring to the local economy the benefit of any industrial expansion similar to that offered by Goodyear.

We first note that Cather filed its petition on appeal in the District Court pursuant to section 15-1201,

R. R. S. 1943, which provides for an appeal to the District Court from a final administrative or judicial order or decision of the city council of a city of the primary class. Obviously, therefore, this action was not a direct action by Cather to restrain the vacation or to recover damages, as has been true in prior Nebraska cases involving the vacation of city streets. See, Rossitto v. City of Omaha, 199 Neb. 260, 258 N. W. 2d 126 (1977); Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622 (1953), rehearing denied, 157 Neb. 768, 61 N. W. 2d 556 (1953); Kraft & Sons, Inc. v. City of Lincoln, 182 Neb. 187, 153 N. W. 2d 725 (1967). Cather appealed to the District Court from the enactment of the ordinances, and not from any order or decision of the city council concerning Cather's alleged right to compensation. There is nothing in the record to indicate that Cather raised its alleged right to compensation before the council, or that the council made any decision in regard to that issue. In choosing to proceed pursuant to section 15-1201, R. R. S. 1943, Cather has precluded itself from raising in the District Court an issue not the subject of an order or decision of the city council. Therefore, we limit our review in this case to the issue of whether the ordinances in question are valid, and whether Cather is entitled to injunctive relief.

Section 15-701, R. R. S. 1943, provides that a city council of a city of the primary class shall have power by ordinance to vacate any street or alley, and that in the event title to the vacated property is retained by the city, "such property may be sold, conveyed, exchanged or leased upon such terms and conditions as shall be deemed in the best interests of the city, as authorized in its home rule charter." Article VIII, section 1, of the charter of the City of Lincoln contains provisions to the same effect as those in section 15-701, R. R. S. 1943. The City of Lincoln also has the general power to sell, convey, exchange, or lease real property owned by it, in such

manner and upon such terms and conditions as shall be deemed in the best interest of the city, provided that no real property having a market value in excess of $5,000 shall be sold, conveyed, or exchanged unless authorized by ordinance of the city council. See, § 15-201, R. R. S. 1943; Art. II, § 1 (5), charter of the City of Lincoln.

It is apparent that under these statutory and charter provisions, the city council has the discretionary power to vacate streets and alleys. The exercise of this discretionary power "is not ordinarily subject to judicial review, unless there has been abuse of discretion, fraud, or glaring informality or illegality in proceedings, or absence of jurisdiction." Hanson v. City of Omaha, *supra*. See, also, 11 McQuillin, Municipal Corporations, § 30.187, p. 116 (3d Ed., 1977). In the present case, there was no evidence of fraud, informality or illegality in proceedings, or absence of jurisdiction. Therefore, the issue subject to judicial review is whether the city council so abused its discretion that the vacation ordinance can be held to be unreasonable and arbitrary. Insofar as the vacation ordinance is concerned, Cather's evidence regarding abuse of discretion was essentially that the vacation deprived Cather of its right to reasonable access to the street system. To overturn a city ordinance on the ground that it invades a private right, the evidence of such facts must be clear and satisfactory. A party seeking an injunction must establish by competent evidence every fact necessary to entitle him to relief, and injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. Hanson v. City of Omaha, *supra*.

The parties are in dispute as to whether Cather is a party entitled to maintain an action to enjoin the vacation. The general rule is that: "A property owner whose property does not abut upon a portion of a street which it is proposed to vacate or which is

obstructed has no right of action to restrain the vacation or prevent the obstruction unless the access to his property is interfered with and he suffers a special or peculiar damage differing in kind from that of the general public." Hanson v. City of Omaha, *supra*. See, also, Feldman v. City of Omaha, 184 Neb. 226, 166 N. W. 2d 421 (1969); 11 McQuillin, Municipal Corporations, § 30.192, p. 124 (3d Ed., 1977). The rule is similar with respect to a property owner's right to compensation. See Rossitto v. City of Omaha, *supra*. Goodyear and the City contend that Cather is not an abutting property owner because its property does not "front" the vacated portion of Ballard Avenue, and that the evidence does not support the view that Cather suffered special damage differing in kind from that of the general public. Cather contends that touching the vacated land, even at a single point, constitutes abutting, and that it in any event did suffer special damage as a result of the vacation.

Although the question of what constitutes abutting property with respect to the vacation of streets is interesting, we need not reach that issue in this case. Even assuming, without deciding, that Cather is either an abutting property owner or has suffered special damage different in kind from that of the general public, it is clear that Cather has not shown by clear and satisfactory evidence that it is entitled to injunctive relief. The question of whether Cather has suffered special damage is concededly a close one, but Cather's evidence was not such that it can be said that its right was clear, its damage irreparable, and particularly that the remedy at law is inadequate to prevent a failure of justice. See, Hanson v. City of Omaha, *supra*; 11 McQuillin, Municipal Corporations, § 30.200, p. 142 (3d Ed., 1977). Counsel for Cather appeared to concede this point at oral argument in this case, as he stated that as a practical matter, since Goodyear has already

constructed its building and has invested large sums of money in connection therewith, Cather did not expect this court to hold the vacation ordinance void, set aside the conveyance to Goodyear, and order the City to reopen the streets. He was primarily concerned with obtaining compensation for damages allegedly sustained.

The second issue in this case is whether the sale ordinance should be declared void because the consideration paid by Goodyear to the City for the vacated land was inadequate. As indicated above, section 15-701, R. R. S. 1943, provides that the city council may sell vacated property "* * * upon such terms and conditions as shall be deemed in the best interest of the city * * *." In the absence of illegality, fraud, or clear abuse of discretion on the part of municipal officers in the exercise of their discretionary power to dispose of municipal property, the sale of such property will not be restrained in equity. 18 McQuillin, Municipal Corporations, § 52.38, p. 75 (3d Ed., 1977); Kalmbach v. City of Mobridge, 81 S. D. 158, 132 N. W. 2d 293 (1964); Newell v. City of Kenosha, 7 Wis. 2d 516, 96 N. W. 2d 845 (1959); 64 C. J. S., Municipal Corporations, § 2152, p. 978. To warrant this court in interfering with a sale of municipal property by municipal officers acting within the scope of their statutory authority, the evidence should be such as to show with reasonable certainty that their action could not be construed as having been taken with a view of the general public welfare. Karlin v. Franciscan Sisterhood of Nebraska, 109 Neb. 711, 192 N. W. 122 (1923). A municipality may not, of course, make a gift of its property to private persons for purposes other than corporate ones, and may not sell its property for wholly inadequate consideration so that a gift is in fact being made. See, 10 McQuillin, Municipal Corporations, § 28.43, pp. 136, 137 (3d Ed., 1966); Gritton v. City of Des Moines,

247 Iowa 326, 73 N. W. 2d 813 (1955); Herman v. City of Lake Mills, 275 Wis. 537, 82 N. W. 2d 167 (1957).

In this case it cannot be said that there was any evidence of fraud or illegality on the part of the city council in selling the land to Goodyear for $9,434.80, and, therefore, the only issue is whether the city council abused its discretion in selling the land for that price.

Cather argues that the consideration was shown to be inadequate for two reasons. First, its expert witness testified that the land was worth approximately $39,000 ($23,000 for the land itself and $16,000 for the paving thereon). Secondly, Cather offered to purchase the land for $30,000, although it did not make this offer until the ordinance authorizing the sale to Goodyear had already been passed.

The issue is not merely whether the consideration accepted by the City was less than it might have procured, but whether the consideration was so inadequate that the sale constituted an abuse of discretion on the part of the city council because it was not in the public interest. The fair market value of the land is not to be judged simply on the estimated value of the land per square foot, but also on other considerations, such as the irregular shape of the land, the purposes for which the land could be used, and the costs inherent in making the land suitable for use by the buyer. It is undisputed that before the vacated land in this case could be put to uses other than a street, removal and relocation of utilities had to take place. As a condition of the sale, Goodyear was required to, and did, not only remove and relocate utilities at the cost of more than $30,000, but also improve them. It was appropriate for the City to consider the cost of removing and relocating utilities in determining the value of the land, and the final sale price was reached by taking such considerations into account.

Although Cather offered to purchase the land for

$30,000 after the ordinance had been passed, there is no evidence that the offer included a promise to relocate or replace utilities. In making the sale, and in considering the public welfare, the city council could properly consider what the buyer would do with the land, whether benefits to the City such as improved utilities would accrue, and whether the local economy would be enhanced. It is also possible that the public welfare would be promoted by placing a vacated street in private control, thereby relieving the municipality from the expense of maintenance and from liability for defects. See 11 McQuillin, Municipal Corporations, § 30.186 a, p. 110 (3d Ed., 1977). Also, the sale to a private party would increase the amount of taxable property in the city.

Although experts could undoubtedly argue whether the City could have obtained a higher price from Goodyear or from another buyer who would fulfill various conditions and meet various requirements favorable to the City, the record in this case does not indicate that the sale price to Goodyear was so inadequate that the sale constituted an abuse of discretion. Therefore Cather's contentions on this issue are without merit.

As noted at the outset of our discussion, we do not reach the issue of whether Cather is entitled to compensation due to the vacation because Cather has appealed only from the enactment of the ordinances, and not from any order or decision of the city council concerning its alleged right to compensation. Cather's claim for compensation was based on section 15-702.03, R. R. S. 1943, which provides: "The right of reasonably convenient egress to and ingress from (sic) lands or lots, abutting on an existing highway, street, or road, may not be denied except with the consent of the owners of such lands or lots, or with the condemnation of such right of access to and from such abutting lands or lots." If, as alleged by Cather in this case, a city of the primary class fails

to condemn a property owner's right of reasonably convenient ingress to and egress from lands or lots under section 15-702.03, R. R. S. 1943, the property owner's remedy would be to bring either an inverse condemnation action pursuant to section 76-705, R. R. S. 1943, or an action in tort. See, City of Omaha v. Matthews, 197 Neb. 323, 248 N. W. 2d 761 (1977); Rossitto v. City of Omaha, *supra*; Hanson v. City of Omaha, *supra*.

We hold only that the city council did not exceed its authority or abuse its discretion in passing the ordinances, and that Cather is not entitled to injunctive relief. All other issues were not properly before the District Court, and are not disposed of in this proceeding.

AFFIRMED.

BOSLAUGH, J., concurring.

While I concur in the result which the court reached in this case, there is a procedural question that I believe requires mention. It was not raised by the parties and is not discussed in the opinion of the court.

The appellant in this case attempted to appeal to the District Court from the adoption by the City of the ordinances vacating the streets and authorizing a sale of the land. The petition on appeal recited that the appeal was taken pursuant to the provisions of sections 15-1201 to 15-1205, R. R. S. 1943. Properly construed that statute permits an appeal from any final administrative or judicial order of the city council only when the council was acting in a quasi-judicial capacity. There can be no direct judicial appeal from an exercise of legislative power. Williams v. County of Buffalo, 181 Neb. 233, 147 N. W. 2d 776.

It is generally held that the power to vacate streets is legislative in nature and may be delegated to municipal corporations by the state. The exercise of such power in a particular case is a legisla-

tive question not ordinarily subject to review.  See 11 McQuillin, Municipal Corporations (3d Ed., 1977), § 30.185, pp. 97, 98.

An ordinance vacating a street is, of course, subject to collateral attack, and that is what the present action amounted to.  The parties subjected themselves to the jurisdiction of the court and are bound by its judgment.

CLINTON, J., joins in this concurrence.