CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION,
APPELLEE, V. CATHER AND SONS CONSTRUCTION, INC.,
A NEBRASKA CORPORATION, APPELLANT.

290 N. W. 2d 798

Filed April 8, 1980. No. 42590.

Edward F. Carter, Jr., of Barney & Carter, P. C., for appellant.

William F. Austin, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This is an appeal by Cather and Sons Construction, Inc., a Nebraska corporation (Cather), from a judgment entered by the District Court for Lancaster County, Nebraska (trial court), on January 10, 1979. By its judgment, the trial court enjoined Cather from proceeding with an inverse condemnation ac-

tion it had filed against the City of Lincoln, Nebraska (City), in the county court of Lancaster County, Nebraska.

Cather assigns two specific errors committed by the trial court: (1) That the trial court erred in finding that Cather was not an abutting property owner within the meaning of Neb. Rev. Stat. § 15-702.03 (Reissue 1977); and (2) That the trial court erred in finding that Cather's action for inverse condemnation was improper and should be enjoined. We have reviewed the record and find that the trial court was correct in its finding that Cather's property did not abut the subsequently vacated street as contemplated by § 15-702.03 but that it was in error in granting the injunction requested by the City. For that reason, we are required to reverse the action of the trial court and remand the case with directions to dismiss.

This is the second appearance of this case before this court and the detailed facts are fully set out in our earlier opinion, *Cather and Sons Constr., Inc. v. City of Lincoln*, 200 Neb. 510, 264 N.W.2d 413 (1978), (*Cather I*), and need not be again set out herein. For purposes of this opinion, it is sufficient for us to briefly describe the facts.

The City, by ordinance, vacated portions of North 56th Street, Morrill Avenue, and Ballard Avenue, all located in the City of Lincoln, Nebraska. Cather owns real estate which fronts on a portion of Ballard Avenue though not directly in front of that portion of Ballard Avenue vacated by the City. The vacated portion of Ballard Avenue ends exactly at the point where the Cather property begins. Cather's property, as it approaches the vacated portion of Ballard Avenue, is triangular in shape as is the vacated portion of Ballard Avenue. The vertex of the Cather triangle and the vertex of the vacated Ballard Avenue triangle come together at a point. It is by reason of this common vertex that Cather maintains

that its property "abuts" the vacated portion of Ballard Avenue.

In *Cather I,* Cather sought to enjoin the City from vacating Ballard Avenue. We affirmed the trial court's denial of Cather's requested injunction, though we noted that the question of Cather's damages by reason of the street vacation was close. Our basis for denying the injunctive relief, however, was premised on our finding in *Cather I* that Cather had failed to prove either that it would suffer irreparable damage by reason of the vacation of the street or that it did not have an otherwise adequate remedy at law. Specifically, we suggested in *Cather I* that the property owner might bring an inverse condemnation action pursuant to Neb. Rev. Stat. § 76-705 (Reissue 1976) if, indeed, Cather had suffered compensable damages.

Following our decision in *Cather I,* Cather did file an inverse condemnation action in the county court of Lancaster County, Nebraska, alleging that it had been "damaged" by reason of the City's vacating the streets in question. The petition in the county court alleged several grounds upon which a right of recovery could be based. One ground was that Cather was "an abutting property owner" whose permission had not first been obtained by the City as required by § 15-702.03. In addition, however, Cather alleged that its property had been damaged by reason of the vacation in violation of Neb. Const. art. I, § 21, which prohibits a governmental subdivision from taking *or damaging* private property without just compensation.

The City then filed this action seeking to enjoin Cather from proceeding with the inverse condemnation. As grounds for the injunction, the City alleged that it had no way to present its defenses in the inverse condemnation proceeding and, therefore, it had no adequate remedy at law. Further, the City alleged that the cost of the inverse condemnation

would be substantial and would be charged against the City because of the City's inability to present its proper defenses. It should be noted that the City's petition in no manner directly or indirectly alleged that, unless the action were enjoined, the City would suffer irreparable harm or damage. Likewise, no evidence was offered by the City during the trial as to what defenses City had which could not be raised in the inverse condemnation action or what costs would be involved in the action which justified the granting of an injunction. The conclusory allegations of the City's petition were totally unsupported by evidence. Likewise, the record is totally devoid of any evidence to prove that, unless the condemnation action were enjoined, the City would suffer irreparable harm or damage.

We have frequently pointed out that before one may be granted injunctive relief, one must *plead and prove* that, unless the injunction is granted, the moving party will suffer irreparable harm and damage and has no other adequate remedy at law. See, *Steffen v. County of Cuming*, 195 Neb. 442, 238 N.W. 2d 890 (1976); *Halligan v. Elander*, 147 Neb. 709, 25 N.W.2d 13 (1946). Likewise, we have noted that injunction is an extraordinary remedy and ordinarily will not be granted except in a clear case where there is an actual and substantial injury. The right must be clear and the damage, irreparable. See *Larson v. Board of Regents*, 189 Neb. 688, 204 N.W. 2d 568 (1973).

The fact that a party, including a governmental subdivision, must expend substantial sums of money to defend a lawsuit, while perhaps unfortunate, is generally not evidence of either irreparable harm or damage, or the fact that no adequate remedy at law exists. Would we enjoin a governmental subdivision from proceeding with condemnation merely because a landowner claimed that it would cost a substantial sum of money to prove its case, absent other evi-

dence of irreparable harm or damage, or absent other evidence of inadequacy of the remedy at law? We think not. See *Cather I.*

Why, then, should the City be granted an injunction in this case, absent its pleading and proof of either irreparable harm and damage, or the inadequacy of its remedy at law?

Both the City, in requesting the injunction, and the trial court, in granting the injunction, placed reliance upon our decision in *State v. Nickel Grain Co., Inc.*, 182 Neb. 191, 153 N.W.2d 727 (1967). We did indeed say in the *Nickel Grain* case that injunction is a proper action in which to present the question of unlawful or improper exercise of the power of eminent domain. In deciding the *Nickel Grain* case, which involved inverse condemnation, we relied upon our decision in the case of *Consumers Public Power District v. Eldred*, 146 Neb. 926, 22 N.W.2d 188 (1946). We now believe that a more careful analysis of both the *Nickel Grain* case and the *Consumers Public Power* case raises a serious question as to whether injunction generally should lie to prevent an action in inverse condemnation. The *Nickel Grain* case authorized the granting of an injunction by a court to enjoin a property owner from proceeding with an inverse condemnation action against a governmental subdivision. As noted, however, a reading of the *Nickel Grain* case discloses that it relied upon our earlier decision in *Consumers Public Power* as authority for the proposition that a governmental subdivision may enjoin a property owner from filing an inverse condemnation action. But, an examination of the *Consumers* case does not support the decision in *Nickel Grain.* Unlike the *Nickel Grain* case, *Consumers* involved a suit by a *landowner* to enjoin a *governmental subdivision* from condemning the landowner's property and not the reverse. While in the *Consumers* case the landowner happened also to be a governmental subdivi-

sion, the basis of the suit was that the condemnation had not yet occurred and the landowner was seeking to prevent the taking. Obviously, in such a case, injunction may be proper if the governmental subdivision seeking to acquire the property is without authority. Little purpose would be served in permitting the governmental subdivision to file a condemnation action, pay the award into court, take possession of the property, and construct the project only to be later told by the court that it was without authority. One cannot "unring the bell."

An entirely different situation exists, however, in an inverse condemnation action. The taking *or damaging* contrary to Neb. Const. art. I, § 21, if proven, has already occurred. Injunction would serve little or no purpose at that point. In this case, the trial court did not enjoin the "wrong," i.e., the damage to the property, if any, but rather enjoined the right to attempt to prove that a wrong had occurred. While there may be an extreme case where such relief, if properly pleaded and proved, might be granted, generally, we should not try matters piecemeal or enjoin a party from having access to a statutory right such as that prescribed by the inverse condemnation statutes even if, ultimately, the landowner is unable to prove any damages. Generally, injunction is not a proper action to prevent a landowner from seeking damages to its property through inverse condemnation by reason of earlier governmental action. To the extent that our decision in *State v. Nickel Grain Co., Inc., supra,* is in conflict with this holding, it is overruled.

In this particular matter, the City has every right to allege and prove in the inverse condemnation action that no damages have occurred to the landowner by reason of its actions and, therefore, no recovery should be allowed. That the City may question how the appraisers will view this defense does not justify denying the landowner the right to try to

prove such claim, first to a board of appraisers and thereafter to a jury on appeal, if need be. If the landowner's claim is without merit as a matter of law, the City can always move for summary judgment once in the District Court. This may be inconvenient but it is no greater a burden than that regularly imposed on landowners. Trial courts should be hesitant to enjoin a citizen's right to claim a benefit under a statute, particularly where, as in this case, there is neither a sufficient allegation nor sufficient proof of either irreparable harm or damage or of an inadequate remedy at law.

Having concluded that the trial court erred in granting the injunction, we could terminate our opinion and say no more. Nevertheless, we recognize that by reason of our action here the landowner may elect to proceed with the inverse condemnation action. In an effort to avoid further unnecessary appeals we have elected to review the question of whether the landowner's property did indeed abut the vacated portion of Ballard Avenue. We avoided that question in *Cather I,* to no avail.

Cather's argument essentially is that the word "abut" means "to touch." Therefore, according to Cather, if its property "touches" the vacated street at any point, Cather is entitled to the rights of an abutting property owner under the provisions of § 15-702.03.

The difficulty with Cather's argument is best pointed out by the authorities and cases cited by Cather in support of its position. In 10 McQuillin, Municipal Corporations, § 30.55, at 763 (3d. ed. 1966), the noted authority on municipal law, it is stated: "If the property does abut, the lot line and street line are common." In other words, there is a recognition that before properties may abut each other there must be some common boundary line and not merely a minute pin-point touching occasioned by the existence of a common vertex.

Similarly, in *Messinger v. City of Cincinnati,* 36 Ohio App. 337, 173 N.E. 260 (1930), cited by Cather, the evidence disclosed that the properties involved had common property lines in part. Again, we see more than just a mere touching.

We believe that a reading of § 15-702.03 likewise indicates that more than a mere pin-point touching is contemplated before a property owner is considered to have "abutting" property. The statute reads, in part, as follows:

The right of reasonably convenient egress to and ingress from . . . may not be denied except with the consent of the owners of such lands or lots, or with the condemnation of such right of access to and from such abutting lands or lots.

It would appear from a reading of this statute that "abutting" means "fronting." It is almost impossible to conceive how one could otherwise have "access" either to or from such abutting property through the mere touching of the two triangles involved in this case. It seems to us that "abutting," in the statute in question, contemplates the ability to move from the street to be vacated onto the property owner's land and return and, therefore, means "fronting." The clear purpose of the statute would seem to be to prevent governmental entities from landlocking private property without either first obtaining permission from the property owner affected or paying compensation therefor. We therefore now hold that in order for a landowner to be considered to have a property abutting on a vacated street under the provisions of § 15-702.03, some portion of the boundary of the landowner's property previously available for ingress or egress to or from the proposed vacated street must be in common with the property line of that street. Other jurisdictions have taken a similar view. See, *Boonville Merc. Co. v. Hogan,* 205 Mo. App. 594, 226 S.W. 620 (1920); Ables

18

*v. Southern Ry. Co.,* 164 Ala. 356, 51 So. 327 (1909). On that basis, the trial court was correct in finding that Cather was not an abutting property owner. Consistent with what we said in *Cather I* about a property owner's right to recover for special damages, if Cather's property has otherwise been damaged by reason of the street being vacated, that matter can be determined in the inverse condemnation action if Cather desires.

The judgment of the trial court is therefore reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

CLINTON, J., not voting.

BOSLAUGH, J., concurring.

I concur only in that part of the opinion which holds that the appellant was not an abutting owner.